# AMERIPRISE'S EXHIBIT 4



240 South Pineapple Avenue
9th Floor
Sarasota, Florida 34236

MICHAEL S. TAAFFE
941.364.2720
mtaaffe@shumaker.com

o 941.366.6660
f 941.366.3999
shumaker.com

November 27, 2024

**VIA E-MAIL**

Cheryl L. Haas
McGuireWoods LLP
1075 Peachtree St., N.E., 35th Floor
Atlanta, GA 30309-3900

Alexander M. Madrid
McGuireWoods LLP
1075 Peachtree St., N.E., 35th Floor
Atlanta, GA 30309-3900

   Re: Ameriprise Financial Services, LLC vs. LPL Financial LLC, Case No. 3:24-cv-01333-JO-MSB
     File No.: A00140-292574

Dear Cheryl and Alex:

  As you can imagine, LPL's "assurances" do nothing to assuage Ameriprise. The fact that your letter clearly states "to be clear, LPL will not agree to a stipulated injunction" shows that LPL has never had an interest in actually resolving this dispute via any kind of compromise.

  Ameriprise maintains its position that it is essential to obtain an order requiring LPL to handle this appropriately. LPL has never explained to us—nor to the Court—why LPL cannot send us the Bulk Upload Tools in question or why LPL cannot return information that never belonged to it in the first place. We need to see scope and breadth of quantity and type of information taken, and we need to ensure that these registered representatives ("RRs") do not have confidential trade secret customer information on their own unsecured personal devices. The RRs do not have the right to have that information on their personal unsecured systems, and Judge Ohta identified the risk and concern in this.

  As we stated previously, there is no way that the RRs themselves would be able to comprehensively ensure that they can locate all of the relevant information, appropriately sequester and forensically preserve it, and then dispossess themselves of it. There is a litigation hold in place; LPL cannot simply have the advisors "double delete" the data without preservation and certification of same—the same is true of the information related to non-customers of LPL on LPL's systems. LPL's proposal does not work.

  Ameriprise had—and has—a duty to protect its customers' information. It was given to Ameriprise by the clients themselves to be safeguarded by Ameriprise. This information was compiled by advisors before they were even affiliated with LPL. The moment the information on the Bulk Upload Tools was given to LPL by the advisors, none of those clients were LPL's clients yet. That misappropriated information was then used to solicit those customers to make them

31831878v1

Cheryl L. Haas
Alexander M. Madrid
November 27, 2024
Page 2


LPL's customers. LPL providing names of customers who did not open accounts with LPL, without also providing the Bulk Upload Tools themselves, does not provide Ameriprise with enough information. Ameriprise would still not know how much, and what types, of information was taken by the RRs to determine whether a notification would be necessary or appropriate and what further action Ameriprise would need to take to ensure forensic preservation and subsequent permanent deletion of the customer data in the RRs' possession.

    As Ameriprise cannot agree with LPL's positions or proposal, and LPL blankly refuses to enter into any type of limited stipulated injunction as Ameriprise proposed, please advise on how you would like to address the Court for the parties' Friday November 29 deadline to advise of the status; it might make most sense to do a singular status report in which there are sections for both Plaintiff's position and Defendant's position. We of course are willing to work with you in good faith and continue these discussions to arrive at a practical solution on how to deal with the data breach issue and are happy to discuss on the phone.

                                                  Sincerely,

                                                  */s/ Michael S. Taaffe*

                                                  Michael S. Taaffe

MST/mbh

31831878v1