1  Molly M. White, State Bar No. 171448
   MWhite@McGuireWoods.com
2  Cheryl L. Haas (pro hac vice)
   Alex Madrid (pro hac vice)
3  Brittney M. Angelich, Bar No. 313011
   MCGUIREWOODS LLP
4  1800 Century Park East, 9th Floor
   Los Angeles, California 90067
5  Telephone: (310) 315-8200

6  Jeffrey K. Compton Bar No. 142969
   JCompton@MZClaw.com
7  MARKUN ZUSMAN & COMPTON LLP
   16255 Ventura Blvd., Suite 910
8  Encino, California 91436
   Telephone: (310) 454-5900

9

10 Attorneys for Defendant
   LPL FINANCIAL LLC

11

12              **UNITED STATES DISTRICT COURT**

13             **SOUTHERN DISTRICT OF CALIFORNIA**

14

15 AMERIPRISE FINANCIAL          | Case No. 3:24-cv-01333-JO-MSB
   SERVICES, LLC,
16                               | Hon. Jinsook Ohta
                Plaintiff,
17                               | **DEFENDANT LPL FINANCIAL LLC'S**
18      v.                       | **NOTICE OF *EX PARTE* MOTION AND**
                                 | ***EX PARTE* MOTION FOR**
19 LPL FINANCIAL LLC,            | **ADMINISTRATIVE STAY AND STAY**
                                 | **PENDING APPEAL**
20                Defendant.
21                               | **Hearing**
22                               | Date: (Hearing date pending)
                                 | Time: (Hearing time pending)
23                               | Place: Courtroom of the Hon. Jinsook Ohta

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO THE HONORABLE JINSOOK OHTA, UNITED STATES DISTRICT JUDGE, AND TO PLAINTIFF AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that pursuant to Fed. R. App. P. 8(a)(1) and this Court's Civil Chambers Rules, Defendant LPL Financial LLC moves *ex parte* before the Honorable Jinsook Ohta, in the United States District Court for the Southern District of California, located at 333 West Broadway, San Diego, California, 92101, for an administrative stay and a stay pending appeal of this Court's July 18 order. This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declaration of Cheryl Haas, the Court's File and records in this action, and such other evidence and arguments as maybe presented to the Court in support of it. An *ex parte* motion is necessary because a noticed motion could not be filed prior to the upcoming deadlines in the July 18 order.

As described in the Declaration of Cheryl Haas, filed concurrently herewith, on July 23, 2025, counsel for LPL attempted to speak with counsel for Ameriprise to meet and confer regarding LPL's requested relief and intent to file this *ex parte* Motion. Counsel received a response later that day from Michael Taaffe's legal assistant advising that Mr. Taaffe was unable to meet and confer until Friday, July 25, 2025, at 1pm. Counsel for LPL replied to that email to explain that because of the upcoming deadlines in the July 18 order, LPL needed to file its motion today. Mr. Taaffe replied to say he had no availability to speak today but could speak tomorrow and asked for the basis of the stay. Counsel for LPL replied that LPL needed to file its motion today but could talk anytime before 7pm eastern. Counsel for LPL also outlined the grounds for the request for the stay. Counsel for LPL did not receive a response prior to 7pm. Counsel for LPL met and conferred with counsel for the advisors on July 23, 2025, and counsel for the advisors stated they were not opposed to this motion.

DATED:  July 23, 2025                    Respectfully submitted,

                                         */s/ Cheryl Haas*
                                         Cheryl Haas

                                         Attorneys for Defendant
                                         LPL FINANCIAL LLC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............. 2

III.  LEGAL STANDARDS ......................................................................... 5

IV.   ARGUMENT ...................................................................................... 5

    A.    Because the July 18 order denied a motion to stay in favor of arbitration, a stay pending appeal is mandatory .............................. 6

    B.    A discretionary stay pending appeal is warranted ......................... 7

        1.    LPL is likely to succeed on the merits of its appeal .............. 7

            a.    The Court lacked the authority to enter the July 18 order because of FINRA's mandatory arbitration rule .... 7

            b.    Ameriprise lacks standing to assert the privacy rights of its customers ................................................. 10

            c.    The Court abused its discretion by granting Ameriprise relief without hearing from LPL .................................... 12

        2.    LPL will suffer irreparable injury absent a stay ...................... 12

        3.    Ameriprise will not be harmed by a stay pending appeal ........ 15

        4.    The public interest favors a stay ............................................ 15

V.    CONCLUSION ................................................................................. 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allison v. CRC Servs., Inc.*,
  No. 10 C 3313, 2010 WL 2523208 (N.D. Ill. June 21, 2010)............................ 15

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023) ..............................................................5, 6, 7, 16

*Elec. Solidus, Inc. v. Proton Mgmt. Ltd.*,
  No. 24-cv-8280, 2025 WL 1712363 (C.D. Cal. May 27, 2025))......................... 7

*Fid. Brokerage Servs. LLC v. McNamara*,
  No. 11 CV 1092 MMA (RBB), 2011 U.S. Dist. LEXIS 60325 (S.D.
  Cal. May 27, 2011) ............................................................................... 8

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ................................................................ 15

*Goldman, Sachs & Co. v. City of Reno*,
  747 F.3d 733 (9th Cir. 2014) .................................................................. 9

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers
Local No. 70 of Alameda Cnty.*, 415 U.S. 423 (1974) ....................................... 12

*Greenlaw v. United States*,
  554 U.S. 237 (2008) ............................................................................ 11

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004) ............................................................................ 10

*Lair v. Bullock*,
  697 F.3d 1200 (9th Cir. 2012)............................................................. 5, 7

*Laver v. Credit Suisse Sec. (USA), LLC*,
  976 F.3d 841 (9th Cir. 2020) .................................................................. 8

*McDaniel v. Wells Fargo Invs., LLC*,
  717 F.3d 668 (9th Cir. 2013) .................................................................. 8

**MOTION FOR STAY PENDING APPEAL**

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung,*
No. CV 01-00659 CBM (RCx), 2001 U.S. Dist. LEXIS 3248, at *6
(C.D. Cal. Feb. 2, 2001) ........................................................................ 8

*Nken v. Holder,*
556 U.S. 418 (2009) .............................................................................. 5

*Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc.,*
762 F.2d 1374 (9th Cir. 1985) ............................................................ 15

*Powers v. Ohio,*
499 U.S. 400 (1991) ............................................................................ 10

*Providence Journal Co. v. Fed. Bureau of Investigation,*
595 F.2d 889 (1st Cir. 1979) ............................................................... 13

*Reading Health Sys. v. Bear Stearns & Co.,*
900 F.3d 87 (3d Cir. 2018) ................................................................... 9

*Simula, Inc. v. Autoliv, Inc.,*
175 F.3d 716 (9th Cir. 1999) ............................................................... 16

*Sterling & Wilson Solar Sol'ns Inc. v. Fidelity & Deposit Co.,*
No. 23-35558, 2024 WL 3934539 (9th Cir. Aug. 26, 2024) ................. 6

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.,*
240 F.3d 832 (9th Cir. 2001) .............................................................. 14

*Toyo Tire Holdings of Ams., Inc. v. Cont'l Tire N. Am., Inc.,*
609 F.3d 975 (9th Cir. 2010) ................................................................ 8

*United States v. Fourteen Various Firearms,*
897 F. Supp. 271 (E.D. Va. 1995) ........................................................ 7

*United States v. Samuels,*
808 F.2d 1298 (8th Cir. 1987) ............................................................ 11

*United States v. Sineneng-Smith,*
590 U.S. 371 (2020) ............................................................................ 11

*Warth v. Seldin,*
422 U.S. 490 (1975) ............................................................................ 10

iii

*Winter v. Nat. Res. Def. Council,*
   555 U.S. 7 (2008) ........................................................................................... 11

*Wudi Indus. (Shanghai) Co., Ltd. v. Wong,*
   70 F.4th 183 (4th Cir. 2023) ............................................................................ 5

**Statutes**

9 U.S.C. § 16(a)(1)(A) ......................................................................................... 6

15 U.S.C. § 78cc(a) .............................................................................................. 9

**Other Authorities**

9th Cir. R. 34-3 .................................................................................................. 16

FINRA, Regulatory Notice 16-25, *Forum Selection Provisions
   Involving Customers, Associated Persons and Member Firms* (July
   22, 2016), https://www.finra.org/rules-guidance/notices/16-25 ......................... 9

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

This case began in July 2024 as a stand-alone request by Ameriprise Financial Services, LLC for temporary injunctive relief to maintain the status quo and protect Ameriprise's purported trade secrets while it pursued what everyone agrees is mandatory arbitration of its claims before a FINRA arbitration panel.  In its July 18 order, nearly one year later, this Court has now declined to stay its proceedings pending that mandatory arbitration. Further, the Court and has required LPL Financial LLC to facilitate extensive and expedited forensic review of its advisors' personal devices and has required nonparties to the litigation to turn over confidential information of the advisors' current and former clients to Ameriprise's counsel—not to protect the status quo or trade secrets, but to address potential privacy interests of certain non-party customers.

LPL and the advisors have appealed that order, and this Court should stay the order pending that appeal.  Although we expect the Ninth Circuit to handle this appeal expeditiously, if this Court's order is not stayed, the bulk (if not all) of the harm to LPL and its advisors will have occurred before the Ninth Circuit can consider the merits of LPL's and the advisors' appeals.  Respect for the Ninth Circuit's deliberation and the parties' rights to appeal weighs strongly in favor of a stay.  There is no urgency here.  The data that the July 18 order targets, by definition, has existed for years and, if present at all, has likely been on the advisors' devices for years.  A relatively brief stay is more than warranted to allow for appellate review.

And there are ample grounds for finding a stay to be warranted.  For one, the fact that the July 18 order effectively denied a motion to stay proceedings pending arbitration means that proceedings in this Court are subject to an automatic stay under the Federal Arbitration Act (FAA) pending appeal.  And, even if that were not so, the grounds for a discretionary stay are more than satisfied.  As common sense

**MOTION FOR STAY PENDING APPEAL**

suggests, the Court need not decide that its order is likely wrong to recognize that. It is enough that, given the FINRA context and the unusual procedural history of this case, LPL has, at least, a substantial case on the merits; that producing confidential, proprietary customer information to opposing counsel—and then deleting it—would likely and irreparably harm LPL and the advisor in the pending arbitration and harm LPL's and the advisors' relationship with their customers; that facilitating such an intrusion into its advisors' personal devices will likely and irreparably harm LPL's relationship with its advisors; and that Ameriprise cannot plausibly claim any irreparable harm from the brief stay needed to allow for appellate review.

The Court should thus stay this case pending LPL's and the advisors' appeals of the July 18 order. Because of the imminence of the July 18 order's deadlines, the Court should also issue an immediate administrative stay to consider this motion. For the same reasons, as well as to permit, if necessary, the Ninth Circuit's orderly consideration of a renewed motion to stay, LPL respectfully requests that the Court resolve this motion by Monday, July 28, 2025.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This action began as a trade-secret dispute between two broker-dealers, Ameriprise and LPL. *See* Compl. (Dkt. 1).[1] Ameriprise alleges that when certain independent contractor financial advisors left Ameriprise to join LPL between 2018 and 2021, LPL encouraged them to retain their customers' information, using an Excel spreadsheet colloquially known as the Bulk Upload Tool. *Id.* at ¶ 34. According to Ameriprise, the retained information constitutes its trade secrets. *Id.* The parties agree that Ameriprise's claims are subject to mandatory arbitration under FINRA rules, *id.* ¶ 2 n.1, and on July 30, 2024, Ameriprise initiated arbitration proceedings against LPL. *Id.* Ex. A. Those proceedings are ongoing.

---

[1] Unless otherwise stated, all docket citations are to documents filed in the present action, 3:24-cv-01333.

The initial purpose of this action was only to resolve Ameriprise's request for a temporary preliminary injunction under a limited exception to FINRA's mandatory arbitration requirement designed to preserve the status quo until an arbitration panel can be formed to consider such a request. *See* Dkt. 15-1. Ameriprise based its motion for temporary injunction on its arguments that the information was a trade secret. But after this Court expressed skepticism that Ameriprise's trade-secret claim warranted an injunction, *see* Dkt. 48 at 7:25–8:12, Ameriprise shifted its strategy. Ameriprise now claims that the Court's intervention is needed to prevent harm not to Ameriprise or its business but prevent harm to current and former Ameriprise customers. *See id.* at 8:19–9:10.

Despite recognizing that such harm would be "largely . . . suffered by the third party" customers, not Ameriprise, this Court directed the parties to attempt to reach an agreement that would mitigate those privacy concerns. *Id.* at 20:23–21:20; 23:5–12. On December 12, 2024, following a court-ordered in-person meet and confer session to be completed that day, Ameriprise and LPL entered into a stipulated order in an effort to address those privacy concerns. Consistent with its negotiated status, the stipulated order was narrow and workable. LPL agreed (1) to identify the advisors, if any, who had retained copies of the Bulk Upload Tool on personal devices and (2) to work with a forensic examiner to create copies of the retained copies of the Bulk Upload Tool and delete them from the advisors' devices. Dkt. 53.

Almost immediately, however, Ameriprise attempted to wield the December 12, 2024, order to force the advisors to turn over their personal devices and to demand that a forensic examiner be allowed to search the devices, fully forensically image the devices, and allow Ameriprise to review the contents of the devices and select information for deletion. Dkt. 79 at 6–7.

A group of LPL advisors sought to intervene in this action. The advisors observed that Ameriprise had since joined them as parties to the pending FINRA

MOTION FOR STAY PENDING APPEAL

arbitration, and they moved to intervene here for the purpose of seeking a stay of proceedings in this Court pending the completion of the ongoing arbitration. Dkt. 60. LPL agreed with that course of action and argued that the limited exception to FINRA's arbitration requirement under which Ameriprise originally asked this Court for relief no longer applied. Dkt. 79 at 13. Meanwhile, Ameriprise both opposed the advisors' motion and filed its own motion to "enforce compliance" with the December 12 stipulated order—by asking the Court to order that the forensic examiner copy and delete not only the Bulk Upload Tool but *any* information associated with a current or former Ameriprise customer. Dkt. 88-1 at 19–20.

When this Court denied the advisors' motion to intervene, it necessarily denied their request to stay this litigation. Dkt. 92. And although the Court purported to deny Ameriprise's motion to enforce compliance with the stipulated order, its order imposes *new* obligations on both the advisors and LPL, including to "permit the forensic examiner to search for data associated with" former Ameriprise customers and to copy and delete such data if it "was created or transferred before" the financial advisor's license transfer date from Ameriprise to LPL. *Id.* ¶ 4.

These new obligations vary significantly from the December 12 stipulated order. For example, while the December 12 order was directed, at most, to information contained within or closely related to the Bulk Upload Tool, Dkt. 53, the July 18 order applies to *any data* "related to" or "associated with" former Ameriprise customers, Dkt. 92 at ¶¶ 3–4. And even while expanding significantly the scope of the forensic review, the new order imposes infeasible deadlines for completing that review. *Id.* ¶¶ 5–6.

For these reasons, LPL has appealed that Court's July 18 order to U.S. Court of Appeals for the Ninth Circuit under 28 U.S.C. §§ 1291, 1292(a) and 9 U.S.C. §16. Dkt. 94. LPL now respectfully asks this Court to stay its order pending the outcome of that appeal.

**MOTION FOR STAY PENDING APPEAL**

### III. <u>LEGAL STANDARDS</u>

When a losing party exercises its "statutory right to an interlocutory appeal" from the denial of a motion to stay proceeding pending arbitration, the "district court must stay its proceedings." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023).

In considering a discretionary stay pending appeal, courts must consider the following factors: (1) whether the stay applicant has shown that there is a "reasonable probability" that it will obtain relief on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Lair v. Bullock*, 697 F.3d 1200, 1203–04 (9th Cir. 2012)). The first two factors are the "most critical." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

### IV. <u>ARGUMENT</u>

The Court should stay the July 18 order for either of two independent reasons. The order is appealable both under 9 U.S.C. § 16, as an order denying a motion to stay arbitration and under 28 U.S.C. § 1292(a) as a mandatory injunction against LPL and the advisors.[2]  Under the FAA, the Court must stay proceedings pending appeal where the order appealed is a request to stay litigation pending arbitration. Although the advisors filed the most recent request to stay, that rationale applies to the entire proceedings, involving the advisors or LPL.  And even if the automatic stay does not apply to LPL, a discretionary stay is warranted in these circumstances to afford LPL and the advisors a meaningful opportunity for appellate review of the obligations imposed.

_____

[2]  Although not styled as such, the July 18 order is a mandatory injunction because "(1) the order … describe[s] the specific conduct required in detail; and (2) the order … provide[s] a deadline to act." *Wudi Indus. (Shanghai) Co., Ltd. v. Wong*, 70 F.4th 183, 190 (4th Cir. 2023) (collecting cases).

A.    **Because the July 18 order denied a motion to stay in favor of arbitration, a stay pending appeal is mandatory.**

When a district court refuses a stay of any action in favor of arbitration, the FAA authorizes an interlocutory appeal.  9 U.S.C. § 16(a)(1)(A).  When that statutory right to interlocutory appeal is exercised, the district court is deprived of jurisdiction to proceed with the case pending appeal. *See Coinbase*, 599 U.S. at 738. That rule applies here:  the advisors moved to intervene in this action to file a motion to stay pending appeal to allow FINRA's mandatory arbitration to proceed.  Dkt. 60, 60-1.  LPL agreed that the Court should allow intervention and enter a stay, arguing that although "[t]his action was originally before this Court under the narrow carve-out to FINRA's mandatory arbitration rule for actions seeking temporary injunctive relief," the Court "has since resolved Ameriprise's motion" and the "parties are thus required to arbitrate all further disputes."  Dkt. 79 at 13.

This Court's denial of the motion to intervene necessarily denied the motion to stay, so an interlocutory appeal is authorized under 9 U.S.C. § 16. *See Sterling & Wilson Solar Sol'ns Inc. v. Fidelity & Deposit Co.*, No. 23-35558, 2024 WL 3934539, at *1 (9th Cir. Aug. 26, 2024).  And, "[b]ecause the question on appeal is whether the case belongs in arbitration or instead in the district court, the entire case is essentially 'involved in the appeal'" and "the district court must stay its proceedings while the interlocutory appeal on arbitrability is ongoing." *Coinbase*, 599 U.S. at 741.

If this Court were to fail to enter a stay and instead require the case to proceed, then the Court "creates the possibility that the district court will waste scarce judicial resources . . . on a dispute that will ultimately head to arbitration in any event." *Id.* at 743.  That reasoning is all the more applicable where, as here, the arbitration proceeding has already begun and is ongoing.  And the same concerns support a stay of the order with respect to both the advisors and LPL, particularly where the obligations imposed on LPL are to "permit" the forensic examiner access to the

6

third-party advisors' personal and business devices and to grant Ameriprise access to information whose ownership the parties' dispute. *See Elec. Solidus, Inc. v. Proton Mgmt. Ltd.*, No. 24-cv-8280, 2025 WL 1712363, at *4 (C.D. Cal. May 27, 2025) (finding a stay of compelled discovery pending appeal was mandatory while the Ninth Circuit determined issues of arbitrability). This Court is thus required to enter a stay pending appeal.

### B.    A discretionary stay pending appeal is warranted.

In any event, even if *Coinbase* did not warrant a stay of the entire case, a stay pending appeal of the July 18 order is warranted under the discretionary stay factors.

#### 1.    LPL is likely to succeed on the merits of its appeal.

To demonstrate a likelihood of success on appeal, a stay applicant must show a "reasonable probability" or a "fair prospect" of obtaining relief on appeal. *Lair*, 697 F.3d at 1204 (9th Cir. 2012). An applicant need not show it is "more likely than not that [it] will win on the merits," only that there is a "substantial case for relief on the merits." *Id.* And thus in deciding whether to stay its own order, this Court is not required "to change its mind or conclude that its determination on the merits was erroneous." *United States v. Fourteen Various Firearms*, 897 F. Supp. 271, 273 (E.D. Va. 1995). So long as "reasonable minds could differ" on whether "the decision now on appeal was . . . correct," then the movant has shown a sufficient likelihood of success. *Id.* That standard is more than satisfied here.

##### a.    The Court lacked the authority to enter the July 18 order because of FINRA's mandatory arbitration rule.

There is no disagreement here that this dispute is subject to mandatory arbitration. FINRA Rule 13200 provides that "a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among: Members; Members and Associated Persons; or Associated Persons." Ameriprise and LPL are both members of FINRA. The advisors are all registered with FINRA and are therefore associated persons

under FINRA Rule 13100. And the underlying claims at issue arise "out of the business activities of" Ameriprise and LPL. *See Laver v. Credit Suisse Sec. (USA), LLC*, 976 F.3d 841, 844 (9th Cir. 2020) ("A FINRA member . . . is bound to adhere to FINRA's rules and regulations, including its Code and relevant arbitration provisions contained therein.").

When Ameriprise filed its complaint and motion for preliminary injunction in this Court, it did so pursuant to a narrow exception to FINRA's mandatory arbitration requirement. FINRA Rule 13804 provides that in disputes required to be submitted to arbitration, "parties may seek a temporary injunctive order from a court of competent jurisdiction." The purpose of this limited exception is to "preserve the *status quo* pending a final determination of the merits of this dispute' by FINRA" *Fid. Brokerage Servs. LLC v. McNamara*, No. 11 CV 1092 MMA (RBB), 2011 U.S. Dist. LEXIS 60325, at *6 (S.D. Cal. May 27, 2011) (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung*, No. CV 01-00659 CBM (RCx), 2001 U.S. Dist. LEXIS 3248, at *6 (C.D. Cal. Feb. 2, 2001) and citing *Toyo Tire Holdings of Ams., Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010)).

But as LPL noted in its response to the advisors' motion, this limited exception no longer applies. The Court denied Ameriprise's request for preliminary injunctive relief in December. And the July 18 order does not preserve the status quo or the meaningfulness of the arbitration process—to the contrary; it upsets the status quo by forcing LPL to facilitate the collection and deletion of information which its independent contractors may have had for years as part of their business. The July 18 order also infringes on the discovery process in an ongoing arbitration. This Court thus lacks the authority to issue that injunctive relief.

The fact that the December 12 stipulated order includes a provision that purports to maintain this Court's jurisdiction to enforce that order does not change that result. FINRA's rules "have the force of law." *McDaniel v. Wells Fargo Invs., LLC*, 717 F.3d 668, 673 (9th Cir. 2013). And they cannot be waived: "[a]ny

condition, stipulation, or provision binding any person to waive compliance with . . . any rule of a self-regulatory organization . . . shall be void." 15 U.S.C. § 78cc(a). As FINRA itself has explained, its "rules are not mere contracts that member firms and associated persons can modify." FINRA, Regulatory Notice 16-25, *Forum Selection Provisions Involving Customers, Associated Persons and Member Firms* (July 22, 2016), https://www.finra.org/rules-guidance/notices/16-25; *see also Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 103 (3d Cir. 2018) ("Reading's right to arbitrate is not contractual in nature, but rather arises out of a binding, regulatory rule that has been adopted by FINRA and approved by the SEC.").[3]

In any event, the December 12 stipulated order cannot be read to authorize the Court's July 18 order. That order explicitly recognized that the "Parties dispute the Advisors' and/or LPL's right to possess or retain the Non-Customer Information, *and the issue will be decided in FINRA arbitration*." Dkt. 53 at 2 (emphasis added). To the extent the stipulation validly permitted the Court to "maintain jurisdiction" to enforce the December 12 order, that stipulation cannot be read to extend this Court's authority beyond facilitating the location and deletion of information contained in or closely related to the Bulk Upload Tool; it certainly cannot be read to permit injunctions or orders that would interfere with the pending arbitration. The scope of discovery into the advisors' devices and their entitlement to retain data are issues at the core of the pending arbitration. The Ninth Circuit is likely to conclude that they must be decided by FINRA, not here.

---

[3] In *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014), the Ninth Circuit held that a forum-selection clause in a contract between a customer and FINRA member could override FINRA Rule 12200's obligation to arbitrate customer disputes where "required by a written agreement" or "[r]equested by the customer." FINRA Rule 13200's arbitration requirement does not turn on a written agreement or a request by either party.

MOTION FOR STAY PENDING APPEAL

b.    <u>Ameriprise lacks standing to assert the privacy rights of its customers.</u>

The Ninth Circuit is also likely to grant LPL relief on appeal because the Court's July 18 order is designed to protect purported privacy interests of third parties who are not before the Court by requiring other third parties to take action. While this action began as Ameriprise's attempt to enforce its own rights to protect against alleged misappropriation of its trade secrets, since the hearing on the preliminary injunction Ameriprise has changed course and asserted that this Court must act to protect the privacy rights of Ameriprise's current and former customers, individuals who are not parties to this proceeding.

Ameriprise does not have standing to assert the rights of their current or former customers.  "[A] party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"  *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).  Courts recognize a "limited exception" to that general rule where (1) "the party asserting the right has a 'close' relationship with the person who possesses the right"; and (2) "there is a 'hindrance' to the possessor's ability to protect his own interests."  *Id.* at 130 (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).  But that exception is inapplicable here—Ameriprise has nothing more than a business relationship with its customers and there is no reason to think that any customers who are concerned about the privacy of their data will face any barrier to vindicating such concerns themselves.

This Court has previously observed that Ameriprise appears to be attempting to assert the rights of others.  When Ameriprise first raised concerns regarding third-party privacy, the Court immediately questioned whether the harm Ameriprise raised was "your harm as opposed to admittedly grave harm on the part of these thirty party . . . individuals?" (Dkt. 48) at 9:11–15.  And in directing the parties to attempt to reach a resolution prior to it ruling on the motion for preliminary injunction, the

10

Court recognized that such efforts would safeguard the rights of third parties, not Ameriprise. *Id.* at 20:6–10 (directing the parties to "figure out something common sense to safeguard this information in the interest of the—of these third parties"); *id.* at 20:24–25 (noting that it sees the "third-party privacy concerns that do have irreparable harm to these individuals" but noting that "granting the injunction as framed by Plaintiff's Counsel may be a blunt instrument" because it might "be overboard, it might be incredibly burdensome, it might be way more than is needed to accomplish these objectives"); *id.* at 23:10–11 ("And largely, that harm or that damage is suffered by the third party.").

At a minimum, it is an abuse of discretion for this Court to afford injunctive relief to protect the privacy rights of Ameriprise's current or former customers, rather than Ameriprise itself. To obtain preliminary injunctive relief, Ameriprise must demonstrate that *it* will suffer irreparable harm absent an injunction. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Here, the only harm Ameriprise has alleged is a generalized concern about the privacy of third parties' information. Not only is this not a harm that Ameriprise will suffer, as is required to obtain an injunction, according to Ameriprise, the advisors have retained this information for years, so it cannot now claim that any harm associated with that retention is irreparable such that the "extraordinary remedy" of preliminary injunctive relief is warranted. *Id.* at 24.

To the extent the Court's July 18 order was not a response to Ameriprise's motion to enforce but was instead an injunction the Court imposed *sua sponte*, that too would be error. As the Supreme Court has observed, "[i]n our adversarial system of adjudication," courts must "rely on the parties to frame the issues for decision," assuming only "the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). Courts "normally decide only questions presented by the parties." *Id.* at 376 (quoting *United States v. Samuels*, 808 F.2d 1298, 1301

11

(8th Cir. 1987) (Arnold, J., concurring in denial of reh'g en banc)). The Court thus lacks the authority to *sua sponte* grant injunctive relief in the manner it did here.

             c.    <u>The Court abused its discretion by granting Ameriprise relief without hearing from LPL.</u>

Finally, and related, the Ninth Circuit is likely to find that the Court abused its discretion by affording Ameriprise injunctive relief without affording LPL a right to be heard. The July 17 hearing was scheduled to address only the advisors' motion to intervene. LPL had not even filed a response to Ameriprise's motion to enforce the stipulated order—its response was due on August 7, weeks later. Dkt. 89. And the Court had previously scheduled a hearing on the motion for September. *Id.* The Court never considered briefing by LPL on issues related to Ameriprise's motion related to the December 12 order before it entered the July 18 order.

Rule 65 of the Federal Rules of Civil Procedure provide that a preliminary injunction may only issue on notice to the adverse party. That notice "implies a hearing in which the defendant is given a fair opportunity to oppose the application *and prepare for such opposition*." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 432 n.7 (1974) (emphasis added). Because LPL was not put on notice that issues related to the enforcement of the December 12 order would be raised at the hearing, LPL had no opportunity to prepare for its opposition. Nor was LPL given a sufficient opportunity to be heard at the hearing. The Ninth Circuit is likely to find that the Court erred by entering the July 18 order, imposing substantial new obligations on LPL, without first affording it the opportunity to be heard.

## 2.     LPL will suffer irreparable injury absent a stay.

Absent a stay pending appeal, LPL will suffer irreparable injury. If the July 18 order is not stayed, LPL will be forced to facilitate, at great expense, (1) the submission of all of its independent contractors' business and personal devices, (2) the copying and transfer to Ameriprise's counsel of data collected from those

devices, and (3) the deletion of data from those devices.  These actions pose a significant likelihood of irreparable harm to LPL by providing Ameriprise's counsel access to confidential, proprietary information and by interfering with LPL's ability to run its business.

Disclosure of confidential materials readily constitutes irreparable harm.  As other courts have observed, "[o]nce . . . documents are surrendered pursuant to the lower court's order, confidentiality will be lost for all time.  The status quo could never be restored."  *Providence Journal Co. v. Fed. Bureau of Investigation*, 595 F.2d 889, 890 (1st Cir. 1979).  The Court's July 18 order requires that the forensic examiner provide a copy of all data related not only to former customers of Ameriprise who chose not to transfer their business to LPL but also all data "associated with" former customers of Ameriprise who *did* choose to move to LPL, as long as the metadata of such information "shows the data was created or transferred before the [financial advisor's] license transfer date."  Dkt. 92 at ¶ 4.  Whether Ameriprise has a right for its counsel to access such confidential information is a question that should be decided by the arbitration panel.

By allowing Ameriprise's counsel the ability to review extensive confidential, customer information collected from LPL's independent contractors, the Court's order is likely to give Ameriprise an unfair advantage in the ongoing arbitration.  Unlike LPL and the advisors who must adhere to the discovery procedures sanctioned by the arbitration panel, Ameriprise will have free rein to peruse confidential information and craft its litigation strategy accordingly.  And even if Ameriprise's counsel is later made to delete data if the Ninth Circuit determines this Court's order was erroneous, "[t]he status quo could never be restored."  *Providence Journal Co.*, 595 F.2d at 890.

Moreover, even assuming Ameriprise's counsel should have access to information obtained by advisors before they left Ameriprise, the Court's requirement that the forensic examiner use metadata to determine whether

13

information should or should not be deleted is ill-suited to make that distinction. To provide accurate and reliable financial advice, the advisors need to review their customers' financial documents that are likely to have been created over a range of years. A document that was only recently transferred to an advisor—well after they joined LPL—may easily have been created years ago and would fall into the range of information Ameriprise's counsel will be permitted to review.

The Court's order not only requires disclosure of confidential information, it also requires LPL's independent contractors to delete data related to former Ameriprise customers who chose to transfer to LPL using the same metadata standard. Dkt. 92 at ¶ 4. This order too would provide Ameriprise an unfair advantage in the arbitration, granting Ameriprise at least partial substantive relief without even reaching the merits of its arbitrable trade-secret and contractual claims against LPL and the advisors. And because the Court's metadata metric is likely to encompass documents that relate to the financial affairs of LPL's advisors' current customers, the Court's order will also directly interfere with LPL's advisors' ability to do their job. Even if the Ninth Circuit eventually rules that such deletion was erroneous and reverses the Court's order, that interference will have continued for months. The loss of customer goodwill and customer relationships during that time period will be irreparable even if LPL is successful on appeal. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm.").

Finally, the Court's order requiring LPL to "permit" the forensic examiner's search is also likely to irreparably harm LPL's goodwill, if not its contracts, with its advisors too. The advisors have made clear that they see this search of their numerous personal devices as a substantial invasion of their privacy. If LPL is forced to facilitate this invasion, its goodwill with its advisors is likely to be substantially and irreparably harmed. Some advisors may choose to leave LPL as a

14

result, causing irreparable harm to its business.  A reversal of this Court's order on appeal would not restore that goodwill.  *See Allison v. CRC Servs., Inc.*, No. 10 C 3313, 2010 WL 2523208, at *6 (N.D. Ill. June 21, 2010).

### 3. Ameriprise will not be harmed by a stay pending appeal.

While LPL will suffer significant harm absent a stay, a brief stay pending appeal will not cause Ameriprise to suffer any harm.  As discussed previously, the July 18 order is solely intended to address concerns Ameriprise raised regarding the privacy interests of third parties.  Because Ameriprise has failed to demonstrate that it is likely to suffer *any* harm related to the advisors' retention of those third parties' data, it cannot show that a stay will cause it to suffer *irreparable* harm.

At most, a stay pending appeal will prevent Ameriprise from reviewing copies of the advisors' data for a few months.  Ameriprise cannot plausibly claim this brief delay will cause it any material harm.  The advisors departed Ameriprise for LPL four-to-seven years ago, and Ameriprise waited until mid-2024 to bring this action and the related arbitration.  Ameriprise waited more than seven months after this Court's entry of the December 12 order to move to enforce the order.  These actions demonstrate that Ameriprise's need for copies of the advisors' customer information or for the advisors' deletion of customer information is not urgent, and Ameriprise will not suffer harm while awaiting the outcome of an appeal.  *See Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay . . . implies a lack of urgency and irreparable harm."); *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (noting that the plaintiff "waited months to seek an injunction" and that the "district court did not abuse its discretion by finding this delay undercut [her] claim of irreparable harm").

### 4. The public interest favors a stay.

Public interest also favors a stay.

First, the public interest strongly supports a stay to avoid mooting LPL's appeal.  An appeal to the Ninth Circuit of this Court's injunction can be completed

15

in a matter of months. *See* 9th Cir. R. 34-3 (granting priority to injunction appeals). But if the Court insists that LPL and the advisors meet the deadlines imposed in the July 18 order, by the time the Ninth Circuit hears the appeal, the ordered procedures will have been completed and the data turned over to Ameriprise's counsel—effectively mooting LPL's ability to obtain meaningful judicial review. The data that the Court's order is targeting for examination and review, if it continues to exist at all, has existed for *years* without any recorded incident of a privacy breach. The compelling public interest in affording parties' their rights to appeal plainly justifies a brief further delay.

Second, the potential interference of the Court's order with the pending arbitration further supports a stay. The "clear federal policy in favor of arbitration" supports a stay to permit the Ninth Circuit to determine the appropriate forum for the parties' dispute over the data at issue. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). And judicial economy supports a stay—as the Supreme Court noted in *Coinbase*, continuing with an action that may ultimately be submitted to arbitration wastes scarce judicial resources. *Coinbase*, 599 U.S. at 743.

## V.    **CONCLUSION**

For the foregoing reasons, LPL requests that this Court enter an immediate administrative stay of its July 18 order and a stay pending appeal to the Ninth Circuit. Given the imminent deadlines imposed by the July 18 order and the irreparable harm that will follow from compliance, LPL further respectfully requests that the Court enter such a stay no later than Monday, July 28, 2025.

DATED:  July 23, 2025                Respectfully submitted,

                                              */s/ Cheryl Haas*
                                              Cheryl Haas

                                              Attorneys for Defendant
                                              LPL FINANCIAL LLC

16