Michael S. Taaffe, FL Bar No. 490318 (Admitted *Pro Hac Vice*)
Justin P. Senior, FL Bar No. 1004223 (Admitted *Pro Hac Vice*)
James E. Fanto, FL Bar No. 1004144 (Admitted *Pro Hac Vice*)
SHUMAKER, LOOP & KENDRICK, LLP
240 South Pineapple Avenue, Post Office Box 49948
Sarasota, Florida 34230-6948
(941) 364-2720; FAX: (941) 366-3999
Mtaaffe@shumaker.com
Jsenior@shumaker.com
Jfanto@shumaker.com

Daniel S. Agle, Bar No. 251090
KLINEDINST PC
501 West Broadway, Suite 1100
San Diego, California 92101
(619) 400-8000/FAX (619) 238-8707
GGarbacz@Klinedinstlaw.com
DAgle@Klinedinstlaw.com

Attorneys for Plaintiff, AMERIPRISE
FINANCIAL SERVICES, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIPRISE FINANCIAL SERVICES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LPL FINANCIAL, LLC,<br><br>Defendant. | Case No. 3:24-CV-01333-JO-MSB<br><br>**PLAINTIFF AMERIPRISE FINANCIAL SERVICES, LLC'S OMNIBUS OPPOSITION TO BOTH LPL'S AND NONPARTY ADVISORS' *EX PARTE* FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL**<br><br>Judge: Hon. Jinsook Ohta<br>Courtroom: 4C<br><br>Motion Filed: July 23, 2025 |

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

Case No. 3:24-CV-01333-JO-MSB

PLAINTIFF AMERIPRISE FINANCIAL SERVICES, LLC'S OMNIBUS OPPOSITION TO BOTH LPL'S AND NONPARTY ADVISORS' EX PARTE FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL

# **TABLE OF CONTENTS**

**Page**

I.   Introduction ................................................................................ 4

II.  LPL And The Nonparty Advisors Failed to Appropriately Confer regarding Their Motions.......................................................... 6

III. Argument ................................................................................ 10

   A.  LPL's and the Nonparty Advisors' Recounting of the Factual and Procedural Background of This Case Is Not Accurate ........................ 10

   B.  The Order Is Not Appealable Upon Either of the Grounds Proffered by LPL or the Nonparty Advisors ......................... 14

   C.  A Mandatory Stay Is Not Appropriate............................... 17

   D.  A Discretionary Stay Is Not Warranted .............................. 19

       1.  LPL And The Nonparty Advisors Are Not Likely To Succeed On The Merits Of Their Appeal.................... 19

       2.  This Court did Not Lack Authority to Enter to July 18, 2025 Order ................................................... 20

       3.  Ameriprise Has Standing.................................... 22

       4.  The Court Did Not Abuse Its Discretion................... 23

   E.  Neither LPL Nor the Nonparty Advisors Will Suffer Any Irreparable Injury Absent a Stay.................................... 23

   F.  Ameriprise Will Suffer Harm if the Court Grants a Stay .......... 25

       1.  The Public Interest Does Not Favor Entry of a Stay .......... 25

   G.  Sanctions Against LPL Are Appropriate ............................. 26

IV.  Conclusion ................................................................................ 26

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

PLAINTIFF AMERIPRISE FINANCIAL SERVICES, LLC'S OMNIBUS OPPOSITION TO BOTH LPL'S AND NONPARTY ADVISORS' EX PARTE FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

# TABLE OF AUTHORITIES

**Page**

## CASES

*A.S.D. v. W. Mun. Water Dist. of Riverside Cnty.*,
  No. E030189, 2002 WL 31820335, at *8 (Cal. Ct. App. Dec. 17, 2002 ........22

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736, 738 (2023) ....................................................15, 18, 24

*Conrad v. Phone Directories Co.*,
  585 F.3d 1376, 1382 (10th Cir. 2009) ..........................................15

*Engebretson v. Mahoney*,
  724 F.3d 1034, 1041 (9th Cir. 2013) ............................................25

*Flip Flop Shops Franchise Co., LLC v. Neb*,
  No. CV 16-7259-JFW (EX), 2016 WL 9275403, at *9 (C.D. Cal. Dec.
  5, 2016) ............................................................................25

*Goldman, Sachs & Co. v. City of Reno*,
  747 F.3d 733 (9th Cir. 2014) ......................................................20

*In re Hassen Real Est. P'ship*,
  4 F. App'x 537, 537 (9th Cir. 2001) ..............................................25

*McDaniel v. Wells Fargo Invs.*, LLC,
  717 F.3d 668, 673 (9th Cir. 2013), ..............................................20

*Nken v. Holder*,
  556 U.S. 418, 434 (2009) ...........................................................19

*Reading Health Sys. v. Bear Stearns & Co.*,
  900 F.3d 87, 103 (3d Cir. 2018), ..................................................20

*Sterling & Wilson Solar Sols., Inc. v. Fid. & Deposit Co. of Maryland*,
  No. 23-35558, 2024 WL 3934539, at *1 (9th Cir. Aug. 26, 2024) .............15

*W. Sec. Bank v. Schneider Ltd. P'ship*,
  816 F.3d 587, 590 (9th Cir. 2016) ................................................15

## STATUTES

28 U.S.C. § 1292(a) .......................................................14, 16, 17

9 U.S.C. § 16..............................................................................14

9 U.S.C.A. § 3...............................................................................18

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

1  **<u>RULES</u>**

2  Federal Rule of Civil Procedure 65 ............................................................ 23

3  Honorable J. Ohta's Civil Chamber Rules .................................................. 6

Case No. 3:24-CV-01333-JO-MSB

PLAINTIFF AMERIPRISE FINANCIAL SERVICES, LLC'S OMNIBUS OPPOSITION TO BOTH LPL'S AND
NONPARTY ADVISORS' EX PARTE FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL

Plaintiff Ameriprise Financial Services, LLC ("Ameriprise") hereby files this Omnibus Opposition to both LPL's and the Nonparty Advisors' *Ex Parte* Motions For Administrative Stay and Stay Pending Appeal. (Dkt. 97, the "LPL Motion;" Dkt. 98, the "Nonparty Advisors' Motion" (together, the "Motions").) Ameriprise addresses both Motions in this Omnibus Opposition per the Court's local rules, which require that "opposition[s] to all motions noticed for the same motion day must not exceed a total of twenty-five pages in length, per party." *See* Local Rule 7.1(h). Given that both Motions were filed almost simultaneously, seek a rapid response from the Court, and appear to be, in most respects, materially the same in argument, Ameriprise is filing one Opposition to both Motions. Separately, Ameriprise addresses the Nonparty Advisors' Motion out of an abundance of caution, despite the fact that this Court appropriately denied their petition to intervene, and, as they are not parties to this case which is administratively closed, they have no standing to petition this Court for a stay.

## I.    Introduction

The instant Motions to Stay are the latest in a long line of tactics designed by LPL and the Nonparty Advisors to delay the revelation of details surrounding their mass misappropriation of up to 187 categories of Ameriprise's confidential client information relating to approximately 4,500 individuals. Background and context are important to fully grasp LPL's bad faith participation in this case, which has led to and underlies its futile Motion to Stay. Ameriprise filed a Motion for Preliminary Injunction (Dkt. 15) nearly a full year ago on August 14, 2024. At the direction of the Court during the December 12, 2024 preliminary injunction hearing, LPL and Ameriprise met and conferred and jointly negotiated, agreed upon, and drafted a Stipulated Order, which the Court entered that same day. (Dkt. 53.)

Given that the Stipulated Order sufficiently addressed much of the relief requested within Ameriprise's Motion, the Court did not make any rulings as matters of law or fact and denied the injunction motion as moot. (Dkt. 55.) In the

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

4

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

Court's Order (Dkt. 55), the Court clearly stated that it was denying the motion for preliminary injunction as moot "because the parties have agreed to the relief contained in the Stipulated Order," and also denied as moot a then-pending Joint Motion To Stay The Litigation Pending FINRA Arbitration, because the Court was administratively closing the case while "maintain[ing] jurisdiction over the Stipulated Order and its enforcement," as agreed to by the parties in the Stipulated Order and entered by the Court. (Dkt. 53, at paragraph 7.)

As this Court is aware, given its comments on the record as to the broad privacy concerns at issue in this case, the Stipulated Order contemplated a forensic review of twenty-nine LPL advisors' personal devices and repositories on which those advisors might have stored, used, or transmitted any Ameriprise customer information. As such, the Stipulated Order specifically contemplates and defines Customers and Non-Customers to differentiate between "individuals whose information was retained by the advisors [who] were or still are customers of Ameriprise" and "individuals whose information was retained by the Advisors [and who] have not opened any account at LPL and/or never became customers of LPL," respectively. (Dkt. 53, at paragraph 2.)

Paragraph 2 of the Stipulated Order contains a requirement for LPL to identify all Customers and Non-Customers to a mutually agreeable third-party forensic examination company. Paragraph 4 of the Stipulated Order speaks to the forensic review process, which clearly contemplates the review, imaging, forensic preservation, and deletion of Customer and Non-Customer information from the advisors' personal devices and repositories. (Dkt. 53.)

However, more than five months after the entry of the Stipulated Order, ten of the twenty-nine advisors made a belated attempt to intervene in this case (Dkt. 60) for the purpose of staying enforcement of the forensic review or otherwise modifying the Stipulated Order. At that time, LPL changed course and took the obviously false and unsupportable position that the forensic review contemplated by

5

PLAINTIFF AMERIPRISE FINANCIAL SERVICES, LLC'S OMNIBUS OPPOSITION TO BOTH LPL'S AND NONPARTY ADVISORS' EX PARTE FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL

the Stipulated Order related only to deletion of the Bulk Upload Tools used and retained by the advisors.

LPL did not oppose the advisors' motion to re-open and intervene, and instead improperly filed a substantive brief entitled a "Non-Opposition" (Dkt. 79) in support of the advisors' motion, seeking to undermine and undo the very relief to which it had agreed roughly six (6) months prior. Ameriprise filed a Motion to Enforce the Stipulated Order (Dkt. 88), given LPL's failure to comply and obtain its advisors' compliance to date. After a hearing on July 17, 2025, the Court issued an Order (Dkt. 92) in which it denied the advisors' motion to re-open the case and intervene, and in that same Order reiterated with specificity that LPL must comply with the relief to which it agreed in the Stipulated Order back in December.

Shockingly, LPL and the Nonparty Advisors now seek to appeal the Court's Order and improperly move to stay the enforcement of that Order, despite the fact that the Court has simply ordered LPL and the Nonparty Advisors to comply with relief that LPL itself negotiated, drafted, and agreed to in all respects in December of last year. For the reasons set out in this Opposition, the Court should deny both Motions.

## II.    LPL And The Nonparty Advisors Failed to Appropriately Confer regarding Their Motions

LPL's and the Nonparty Advisors' "attempts" to confer were a sham and did not constitute compliance with the Civil Chamber Rules, which specifically state that "[b]efore filing any *ex parte* motion, counsel must contact the opposing party to meet and confer regarding the subject of the *ex parte* motion" and that "[a]ll *ex parte* motions must be accompanied by a declaration from the movant documenting" in relevant part, "counsel's good faith efforts, in person or by telephone, to meet and confer to resolve differences with opposing counsel." *See* Honorable J. Ohta's Civil Chamber Rules, at III.

/ / /

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

1    Counsel for LPL, Cheryl Haas, omits several critical pieces of information
2    from her Declaration (Dkt. 97-1), as does Ms. Berger, counsel for Nonparty
3    Advisors, in her own (Dkt. 98-1). LPL and the Nonparty Advisors, determined to
4    file their Motions at close of business on Wednesday July 23, did everything they
5    could to avoid conferring in good faith with Ameriprise.

6    Previously this week, LPL and the Nonparty Advisors engaged in
7    gamesmanship by attempting to schedule a call with the third-party forensic
8    examiner, and requiring it to be held on Monday, suggesting that the need to comply
9    with the pending order was critical, but then filed the Notices of Appeal later that
10   same day. In other words, they scheduled this call under the guise of criticality,
11   when in fact their objective was to elicit a response from the forensic examiner
12   indicating that the task at hand was unreasonable, but when in fact the forensic
13   examiner indicated the opposite, they filed their Notices of Appeal.

14   Given that LPL and the Nonparty Advisors knew they were appealing later
15   that day, they also knew they would also be moving to stay enforcement of the
16   Court's Order. However, they did not seek to confer on their Motions until two days
17   later—the same day the ex parte motions were filed—depriving the parties of an
18   opportunity to meaningfully confer per the rules. Of course, the Nonparty Advisors
19   and LPL had ample opportunity to attempt to confer with Ameriprise about these
20   Motions to Stay prior to Wednesday and failed to do so.

21   Interestingly, LPL sent its initial email seeking to confer on its Motion to only
22   Michael Taaffe, despite the fact that nearly all prior email correspondence between
23   these parties has been sent to, or has copied most if not all, attorneys working on this
24   case, regardless of whether they are even counsel of record. *See* Dec. of M. Taaffe,
25   Exhibit 5. A recent example of this comes in the form of the parties discussing the
26   status of LPL's compliance with paragraph 5 of the Stipulated Order, in which Ms.
27   Haas sent her July 10, 2025 email to Michael Taaffe, Justin Senior, Brandon Taaffe,
28   James Fanto, and Jarrod Malone, representing Ameriprise, as well as four other

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

7

PLAINTIFF AMERIPRISE FINANCIAL SERVICES, LLC'S OMNIBUS OPPOSITION TO BOTH LPL'S AND
NONPARTY ADVISORS' EX PARTE FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL

attorneys representing LPL, as has been the parties' practice over the nearly 13-month life of this case. *See* Dec. of M. Taaffe, Exhibit 6.

The obvious reason LPL now omitted these attorneys, knowing that Ameriprise's counsel is preparing for a five-day trial against LPL that commences on Monday, July 28, is because LPL wanted Ameriprise's counsel to not see or be able to respond on such short notice so that LPL could file their Motion on the same day indicating it was not able to confer with counsel. *See* Dec. of M. Taaffe, Exhibit 5. It is no surprise that the Nonparty Advisors' counsel, Jamie Berger, took the same approach at roughly the same time, in which she sent a conferral email to only Justin Senior, and failed to copy any other attorney representing Ameriprise in this case. *See* Dec. of M. Taaffe, Exhibit 7. This is pure gamesmanship that flouts and undermines this Court's rules for the purpose of advantage.

In any event, when Ameriprise's counsel responded and indicated that they were not available to confer until Friday morning, both LPL and the Nonparty Advisors' counsel indicated that they would each be filing their Motions that same day regardless, clearly suggesting that their intent was never to actually confer in good faith pursuant to the rules. *See* Dec. of M. Taaffe, Exhibits 5 and 7. When Ameriprise then sent a follow-up email seeking to make availability to confer the next morning on Thursday instead, both LPL's counsel and the Nonparty Advisors' counsel again rejected the offer, insisting that their motions had to be filed that same day within hours of reaching out to counsel for Ameriprise. *See id.*

Again, this clearly demonstrates that neither LPL nor the Nonparty Advisors had any intent to meet and confer in good faith to see if they could dispense with the *ex parte* motion practice. There is no reason that the Motions must have been filed on July 23. LPL did not confer in good faith or seek to resolve any issues, nor did it even attempt to confer telephonically, which is required under the rules as cited above and despite Ameriprise's offer to confer the very next business day. LPL seeks an appeal and moved to stay this Court's Order despite the fact the Order

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

8

1 appealed from is a simple reinforcement of the Stipulated Order that has been in

2 place since December 12, 2024, and was never appealed. It appears that LPL has

3 forgotten that LPL itself negotiated, jointly drafted, and agreed to the relief

4 contained within the Stipulated Order. The fact that the Court set a schedule for

5 completion of that relief roughly eight months after it was originally entered does

6 not give rise to an appeal from an Order issued eight months prior and defies logic.

7     In its final correspondence to Ameriprise regarding conferral efforts prior to

8 filing its Motion, LPL indicated that one of the grounds upon which it was moving

9 was that the Court's recent order purportedly expanded the scope of the original

10 order. While false, if that was actually the case, what LPL should have done is

11 conferred with Ameriprise on how, in its view, the scope of the Stipulated Order

12 was expanded by the recent Order, and whether Ameriprise would be amenable to

13 LPL simply complying with the Stipulated Order as drafted, to make sure that both

14 parties understood exactly what was required. Of course, LPL had no interest in

15 actually doing so.

16     Instead, as Ameriprise has been alleging for months, LPL has clearly shown

17 one of two things: either (1) LPL never intended to follow through on complying

18 with the Stipulated Order, or (2) LPL changed its mind sometime after the Court's

19 entry of the Stipulated Order. In either event, it has never been clearer that LPL's

20 appearance and participation before this Court has been duplicitous at best and in

21 bad faith at worst. This misconduct is only highlighted by counsel for LPL's many

22 failures to conduct itself appropriately before this Court even at oral argument,

23 during which LPL's counsel failed to directly respond to the Court, calling into

24 question LPL's counsel's candor. More specifically, the Court stated on the record

25 as follows: "Counsel, I'm out of patience with you not answering my questions. I

26 asked you a very specific question about your position. . . this has been now I think

27 five times during this course of one hearing alone where you're not answering my

28 / / /

PLAINTIFF AMERIPRISE FINANCIAL SERVICES, LLC'S OMNIBUS OPPOSITION TO BOTH LPL'S AND NONPARTY ADVISORS' EX PARTE FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL

question. Transcript of Hearing on Mot. to Intervene & Motion to Enforce, at 31:18-25 (July 17, 2025).

### III.  Argument

#### A.  LPL's and the Nonparty Advisors' Recounting of the Factual and Procedural Background of This Case Is Not Accurate

LPL and the Nonparty Advisors argue some shift in the relief requested, though none exists. LPL generally argues that Ameriprise's original case was a simple trade secret case focused only upon LPL and certain of its recruited advisors' use of the Bulk Upload Tool. *See* Motion, at 2-3. However, Ameriprise's Complaint was clear that this case was not limited to the Bulk Upload Tool, and that the Bulk Upload Tool was only a component of the allegations, which were that LPL's recruiting practices—on a national and widespread basis—actively and continually serve to misappropriate confidential client information *en masse*, violate an industry agreement called the Protocol for Broker Recruiting, that LPL uses other tools to circumvent that Protocol, and that the Bulk Upload Tool is just one such tool that Ameriprise was aware of, and that LPL's recruited advisors in the recent past were using means other than the Bulk Upload Tool to circumvent the Protocol. As noted in the prior hearing, if another spreadsheet of Ameriprise client information exists that was used to populate the bulk upload tool, that additional data would clearly be part of any forensic review.

Ameriprise's arguments and the scope of what was ordered never changed. The Court merely set a firm schedule and deadline for its occurrence. Ameriprise's original requested relief was for forensic review of LPL's and its advisors' devices to secure the confidential data taken by LPL and its advisors in order to, *inter alia*: (1) protect Ameriprise and its goodwill and reputation; (2) comply with Ameriprise's legal and regulatory obligations; and (3) protect the privacy of Ameriprise's customers, to whom Ameriprise owes such a duty, as does LPL.

/ / /

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

LPL's summary of the conferral process and eventual agreement as to the Stipulated Order, as this Court knows, is unsupportable revisionist history. LPL now claims that the forensic review contemplated by the parties in the Stipulated Order related only to the deletion of the Bulk Upload Tool. This is verifiably false, and LPL's bad-faith position is belied by the facts that LPL jointly drafted both the Stipulated Order and the Questionnaire/Certification ("Certification") sent to advisors to identify devices for forensic review.

Ameriprise demonstrated in painstaking detail all of the reasons why it is obvious that the Stipulated Order contemplates forensic review and deletion of all Customer and Non-Customer information, not just the Bulk Upload Tools, in its Memorandum of Points and Authorities in Support of its Motion to Enforce Compliance. (Dkt. 88-1, at 10-14.) Ameriprise incorporates and reiterates those arguments here, in an abundance of caution.

The scope of Paragraph 4 of the Stipulated Order is clear in that it encompasses *all Customer and Non-Customer Information* (to be identified, imaged, provided to counsel and deleted). Ameriprise's action was—and always has been—about LPL's recruitment practices putting Ameriprise customer information at risk and attempting to secure and safeguard the customer information still at risk today as a result of LPL's unlawful conduct. When the parties agreed to the Stipulated Order, they did so in the context of forensically identifying, preserving, and permanently deleting all Ameriprise customer information from the advisors' personal, unsecured devices and repositories.

The Court will recall that the parties always discussed the relief in the context of removing all confidential information of customers from the personal devices and repositories of the advisors. On the first hearing on Ameriprise's Motion for Preliminary Injunction, the Court made the following statement:

Ameriprise is telling me -- **and I agree with him** -- he not only has contractual obligations to see through **protecting this information**, as

Case No. 3:24-CV-01333-JO-MSB

PLAINTIFF AMERIPRISE FINANCIAL SERVICES, LLC'S OMNIBUS OPPOSITION TO BOTH LPL'S AND NONPARTY ADVISORS' EX PARTE FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

well as, you know, I would think some kind of just client fiduciary-type duty to do so even if it wasn't written down in black and white **to make sure it's not all on these private laptops**. . .

Transcript of Hearing on Mot. for Preliminary Injunction, at 18:6-12 (Nov. 14, 2024) (emphasis added). The Court also stated that it saw "massive third-party privacy concerns that do have irreparable harm to these individuals." *Id.* at 20:24-25.

The Court consistently raised privacy concerns of these third-party individuals—this is not limited to just the Bulk Upload Tool. The Court further commented as to safeguarding sensitive information "in the interest [] of these third parties"[1] and further stated that "[w]hat's significant here is you both know this is what should have happened. This is what still remains. This is what still needs to happen." *Id.* at 20:14-26.

Much as the Court said eight months ago, this still needs to happen, and LPL is <u>still</u> attempting to, at worst, assist its advisors in avoiding this necessary relief, or, at best, to modify the scope of the relief to leave sensitive and confidential customer information at risk. Undoubtedly, the Bulk Upload Tool is a significant source of the confidential customer information on advisors' devices and repositories which itself must be removed. However, it is clearly not the original or only source of such sensitive information, and a search limited to just the Bulk Upload Tool does not address all of the privacy concerns at issue.

Moreover, the drafting of the Stipulated Order is clear: the Stipulated Order clearly provides for identification, return, and deletion of all "Customer and Non-Customer Information," not just the Bulk Upload Tool. The Stipulated Order defines Customer Information as follows: "customer information retained by thirty financial advisors upon their departure from Ameriprise (the 'Customer Information')." In

---

[1] *Id.* at 20: 7-8.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

fact, while the Bulk Upload Tool is specifically referenced elsewhere in the Stipulated Order, Paragraph 4, which controls the forensic examination of the advisors' devices and repositories, only addresses "Customer and Non-Customer Information" and does not mention the Bulk Upload Tool specifically.

Furthermore, in the jointly-drafted Certification sent to the advisors' counsel, the parties clearly indicated that the forensic examiner was going to "[r]easonably review locations in your client's personal device(s) and/or repository(ies) on which the customer information was retained and/or stored." The parties specifically referred to "customer information," not just the Bulk Upload Tool.

Next, the parties clearly indicated to the advisors' counsel as follows: "It's imperative your client(s) and their team(s) locate and identify *any* device or repository used during their transition from Ameriprise to LPL that may contain or were otherwise used to store or transmit any PII of your client's then-Ameriprise customers."[2] This exact provision was drafted word for word by LPL's counsel in its original and initial March 6, 2025 draft of the Certification.[3] The original draft of the Certification which was created by LPL also contains the following language: "the federal court has ordered LPL to locate all PII of your client's customers on any of your client's, or their team's personal devices. To scope where we will look and how we will gather the information, we have created a questionnaire for your client to complete."[4]

Again, the language drafted by LPL itself is not limited to the Bulk Upload Tool, but instead references any PII of the customers, regardless of format. Finally, Ameriprise and LPL's jointly-drafted Certification contains a definition for the term "Ameriprise Client Information" which specifically refers to "any personal

---

[2] *See* Dec. of M. Taaffe, Exhibit 2.

[3] *See* Dec. of M. Taaffe, Exhibit 3.

[4] *See* Dec. of M. Taaffe, Exhibit 3

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

<u>identifying information related to clients you serviced while affiliated with Ameriprise</u> and/or alternatively, documents created by Ameriprise or by you or your team regarding Ameriprise business or clients while you were at Ameriprise."

The above—together with the plain language of the Stipulated Order, the language of the parties before the Court, and the Court's own language as stated above—clearly shows LPL's agreement that the parties have always sought to identify, image, and delete all sensitive, confidential customer information on the advisors' personal, unsecured devices, not just the Bulk Upload Tool. LPL now pretends differently, despite the parties always being on the same page throughout oral argument and drafting of Stipulated Order and Certification.

As shown above, the parties' original intent was to identify and delete all such Customer and Non-Customer information from the advisors' devices—why else does the Stipulated Order contain provisions that require LPL to provide the Customer and Non-Customer information (and not just the Bulk Upload Tools) to the forensic examiner? It is for the forensic examiner to use the names and unique identifiers (such as social security numbers) of those customers to identify if any such Customer and Non-Customer information exists on those devices to be deleted.

**B.    <u>The Order Is Not Appealable Upon Either of the Grounds Proffered by LPL or the Nonparty Advisors</u>**

LPL and the Nonparty Advisors argue that the Court's Order is appealable under either 9 U.S.C. § 16, as an order denying a motion to stay arbitration or alternatively under 28 U.S.C. § 1292(a) as a mandatory injunction against LPL and the advisors—not so. As a threshold matter, the Court did not deny any motion to stay by the Intervening Advisors, nor was any motion to stay by the Intervening Advisors pending before the Court. The Nonparty Advisors sought to *reopen* the case and intervene in order to then file a motion to stay or in the alternative modify the stipulated order.

/ / /

PLAINTIFF AMERIPRISE FINANCIAL SERVICES, LLC'S OMNIBUS OPPOSITION TO BOTH LPL'S AND NONPARTY ADVISORS' EX PARTE FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL

In this regard, the Nonparty Advisors signaled that even if they were permitted to intervene they would have been happy with a modification of the order instead of a stay. By doing so, the Nonparty Advisors were "no longer proceeding exclusively under the FAA and … forfeited their right to interlocutory review under § 16(a)." *Sterling & Wilson Solar Sols., Inc. v. Fid. & Deposit Co. of Maryland*, No. 23-35558, 2024 WL 3934539, at *1 (9th Cir. Aug. 26, 2024); *see also W. Sec. Bank v. Schneider Ltd. P'ship*, 816 F.3d 587, 590 (9th Cir. 2016) ("If, on the other hand, the movant in the district court requests a judicial remedy that is inconsistent with the position that the issues in the litigation may be decided only by the arbitrator, the movant is no longer proceeding exclusively under the FAA and has forfeited their right to interlocutory review under § 16(a).") (internal quotation marks omitted) (adopting the test applied by the 10th Circuit in *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1382 (10th Cir. 2009)). As no motion to stay was ever before the court, the Court's Order does not address a motion to stay and is not appealable pursuant to 9 U.S.C. § 16.

Further, the Federal Arbitration Act does not apply because it only governs arbitration agreements. *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023). In December 2024, the parties entered into an agreement in court, which was memorialized in a Stipulated Order. Since the parties agreed that this Court had jurisdiction to enforce the Stipulated Order, enforcement of the Stipulated Order is not subject to arbitration. In July 2025, this Court had clear jurisdiction to enter its order implementing the parties' agreement. While there is an arbitration proceeding ongoing between the parties, the Federal Arbitration Act does not govern LPL's appeal from the order enforcing the Stipulated Order. Since the Federal Arbitration Act does not apply, there is no right to an automatic stay.

Furthermore, under *Coinbase*, only when an interlocutory appeal is taken from an order denying a motion to compel arbitration is there an automatic stay of district court proceedings. See *Coinbase*, 599 U.S. at 740, 744, 747. Here, there is

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

no order denying a motion to compel arbitration. Therefore, there is no right to an automatic stay of the Court's July 18, 2025 Order.

Neither the Stipulated Order nor the Court's July 18, 2025 Order are mandatory injunctions, and therefore the recent Order is not appealable under 28 U.S.C. § 1292(a). Ameriprise is stunned that LPL attempts to argue to this Court that the Stipulated Order and the Court's recent enforcement of it constitutes an injunction. LPL was crystal clear in the parties' negotiations that it would never stipulate to an injunction. *See* Declaration of M. Taaffe, at paragraph 4. Indeed, when Ameriprise circulated a first draft of a stipulated injunctive order, LPL's redline of that draft document removed all references to an injunction from the caption and body of the draft and again reiterated that LPL would never stipulate to any form of injunction. A copy of the redlined draft Stipulated Injunctive Order that preceded the parties' agreed-upon stipulated non-injunctive order is attached to the Declaration of M. Taaffe, at paragraph 4.

This is supported by LPL's counsel's statements following the agreement on the Stipulated Order when the parties reconvened before the Court. Counsel for LPL, Molly White, stated: "I do believe that motion for preliminary injunction is still pending and probably should be denied in light of the stipulated relief." Transcript of Hearing on Mot. for Preliminary Injunction, at 9:3-5 (Dec. 12, 2024). To which the Court replied: "Yes, thank you. So, I'm going to deny the motion for preliminary injunction as moot because the stipulated order has taken care of the appropriate relief." *Id.*, at 9:6-8.

In contrast to an injunction, LPL simply agreed to have its advisors, over whom it has contractual employment, legal, and regulatory control, submit their unsecured devices to a forensic examiner for the agreed-upon purpose of removing confidential current and former Ameriprise information. This has clearly been both parties' understanding all along as well as FINRA's, as FINRA did not hold a Rule 13804 hearing, which is required upon entry of any injunctive relief.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

16

Because LPL would not agree to an injunction and the Court denied Ameriprise's injunctive motion as moot, Ameriprise lost its ability to have an injunction confirmed by the arbitration Panel in FINRA. Further, if this was an actual injunction, LPL would have had an opportunity at a Rule 13804 hearing to appeal it; as it is FINRA that decides whether an injunction over FINRA members was appropriate, not an appellate Court. FINRA provides a vehicle and means to automatically appeal an injunction pursuant to the very rule under which Ameriprise sought its injunction. But by refusing to stipulate to an injunction, LPL already forfeited its right and means to call this relief injunctive in nature and have it reviewed by a FINRA panel; instead, as stated, LPL agreed that this Court maintains jurisdiction over the Stipulated Order and its enforcement.

As neither of the Court's Orders are injunctions, as required by the arguments put forth by LPL and the Nonparty Advisors, the Orders are not appealable pursuant to 28 U.S.C. § 1292(a).

## C.    A Mandatory Stay Is Not Appropriate

As stated above, the Court did not refuse to stay any action in favor of arbitration. The Court administratively closed this case in favor of arbitration on December 12, 2024. The Court even stated on the record on December 12 that, in regards to the then-pending motion to stay the litigation in favor of arbitration, the Court was "going to deny it just because there doesn't seem to be any relief left for this Court to grant. I'm going to close the case" subject to reopening the case "if there are issues with enforcement of that stipulated order." Transcript of Hearing on Mot. for Preliminary Injunction, at 9:9-11 (Dec. 12, 2024).

While the parties are required to arbitrate their disputes, Ameriprise had every right under FINRA Rule 13804 to seek preliminary injunctive relief in this forum and to have the Court maintain jurisdiction over any Order entered appurtenant thereto.

/ / /

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

Case No. 3:24-CV-01333-JO-MSB
PLAINTIFF AMERIPRISE FINANCIAL SERVICES, LLC'S OMNIBUS OPPOSITION TO BOTH LPL'S AND NONPARTY ADVISORS' EX PARTE FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL

1    LPL's and the Nonparty Advisors' arguments that the Court's denial of the

2    Motion to Intervene necessarily denied the motion to stay thereby authorizing an

3    interlocutory appeal, is a stretch in causal logic. LPL and the Nonparty Advisors

4    both cite *Sterling & Wilson Solar Sols., Inc. v. Fid. & Deposit Co. of Maryland*, No.

5    23-35558, 2024 WL 3934539, at *1 (9th Cir. Aug. 26, 2024) for this proposition,

6    but the *Sterling* case does not actually hold as much.

7    In *Sterling*, the Ninth Circuit actually dismissed the appellant's claim and

8    held that "the denial of a discretionary stay is not an appealable order." *Id.* In that

9    case, the court held that the appellant "did not seek to compel Sterling and the

10    sureties to arbitrate any claims they are currently litigating in the district court." *Id.*

11    So too here. Not only did the Nonparty Advisors never get their motion to

12    stay before the Court, as they were never allowed to intervene in the first place, the

13    potential motion to stay did not seek to compel Ameriprise to arbitration. This case

14    is already administratively closed. Ameriprise is already arbitrating. LPL and the

15    Nonparty Advisors are really seeking a stay under Section 3 of the FAA, which

16    explicitly states that the Court may "stay the **trial** of the action until such arbitration

17    has been had in accordance with the terms of the agreement." 9 U.S.C.A. § 3. There

18    is no trial scheduled in this case; therefore, Section 3 is not applicable. For these

19    same reasons, *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023), which LPL and

20    the Nonparty Advisors rely upon almost completely, is similarly inapposite. As

21    such, a mandatory stay is not appropriate.

22    Even if applicable, *Coinbase* was addressed under an entirely different

23    procedural posture, where a trial on the merits would proceed in court, but for a stay,

24    and thereby potentially waste judicial resources if it were determined the matter is

25    ultimately subject to arbitration. By contrast, here, if LPL would simply comply

26    with the relief to which it previously agreed, there would be no further judicial

27    resources utilized. *Coinbase* suggests that "judicial economy" is a primary driver—

28    / / /

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

1  here, judicial economy would be best served by requiring LPL (and the Nonparty

2  Advisors) to comply with the relief to which LPL itself agreed months ago.

3        Accordingly, it is clear that a mandatory stay is not appropriate under the

4  circumstances of this matter. Further, the *Nken v. Holder*, 556 U.S. 418, 434 (2009)

5  factors cited by the Nonparty Advisors do not warrant a discretionary stay for the

6  reasons discussed below.

7       **D.**    **A Discretionary Stay Is Not Warranted**

8          **1.**    **LPL And The Nonparty Advisors Are Not Likely To Succeed**

9               **On The Merits Of Their Appeal**

10        LPL literally agreed to the relief it now seeks to appeal. More than that, LPL

11  negotiated and jointly drafted the relief. The Court's July 18, 2025 Order merely

12  clarifies that it is requiring compliance with the December 12, 2024 Order as drafted

13  and agreed to by the parties. Why would the Ninth Circuit Court overturn the relief

14  enforced by this Court that LPL agreed to?

15        Moreover, LPL's appeal is not timely. If the December 12, 2024 Order was

16  an injunction, the time to appeal that Order was within thirty days of its entry. Fed.

17  R. App. P. 4(a)(1)(A). The Court's July 18, 2025 Order does not expand the scope

18  of or modify the Stipulated Order in any way—it simply provides clarification and

19  requires compliance. The Court was abundantly clear in this regard, stating, *inter*

20  *alia*:

21      ➢  "So this is the Court's interpretation of the consent decree as agreed upon by

22         the parties and as signed off by the Court." Transcript of Hearing on Mot. to

23         Intervene & Motion to Enforce, at 35:18-20 (July 17, 2025).

24      ➢  "This is how the Court interprets as applied to this particular dispute in front

25         of it, the terms of the consent decree as signed by the Court." *Id.* at 36:21-23.

26      ➢  "And so that's how the Court is interpreting the … stipulated order between

27         … between the two parties here." *Id.* at 40:8-9.

28

PLAINTIFF AMERIPRISE FINANCIAL SERVICES, LLC'S OMNIBUS OPPOSITION TO BOTH LPL'S AND NONPARTY ADVISORS' EX PARTE FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL

➢ "[W]hat I've done right now is taken care of … the dispute between LPL and Ameriprise as to what exactly the agreement that they entered into, and what exactly does the court order mean in specific terms." *Id.* at 49:16-19.

➢ "I think I have provided further clarification on the agreement which should moot the upcoming matter in front of me." *Id.* at 49:5-7.

In any event, as evidenced above, the Stipulated Order is not an injunction; yet, nearly all of LPL's and the Nonparty Advisors' case law relates only to injunctions, and not to any motions to stay enforcement of a prior order. LPL's and the Nonparty Advisors' case law speaks to the "right to arbitrate."[5] However, Ameriprise is not denying any party's (or nonparty's) right to arbitrate. The arbitration is ongoing. That does not strip this Court of jurisdiction over the Order that it entered in December.

The July 18, 2025 Order does not change the *status quo*, as Nonparty Advisors argue. *See* Nonparty Advisors' Motion, at 8-10. The Nonparty Advisors were already required to submit their devices for forensic review by the December 12, 2024 Stipulated Order. The July 18, 2025 Order does not modify that *status quo*—it maintains it.

### 2. This Court did Not Lack Authority to Enter to July 18, 2025 Order

The parties expressly agreed that this Court retain authority and jurisdiction to enforce the Stipulated Order. Ameriprise's recent motion subject to the July 18, 2025 Order was a Motion To Enforce Compliance With The Stipulated Order— exactly as contemplated by the language the parties drafted in the Stipulated Order.

---

[5] *See LPL Motion, at 8-9* (citing *McDaniel v. Wells Fargo Invs.*, LLC, 717 F.3d 668, 673 (9th Cir. 2013), Regulatory Notice 16-25, *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 103 (3d Cir. 2018), *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014)). These sources all stand for the proposition that member firms cannot include forum selection clauses with customers. They are not relevant to this dispute.

LPL tries to minimize the effect of the jointly-drafted language, and states that "[t]he fact that the December 12 stipulated order includes a provision that purports to maintain this Court's jurisdiction to enforce that order does not change that result [that the Court lacks authority to issue injunctive relief]." *See* LPL Motion, at 8.

First, the Court did not enter injunctive relief; second, even if it did, the FINRA rules expressly authorize the court to enter injunctive relief under Rule 13804. This Stipulated Order came about as a result of Ameriprise filing its motion for preliminary injunction. That motion was then denied as moot based on the entry of the Stipulated Order; if LPL is not going to comply with the Stipulated Order, Ameriprise's Motion for Preliminary Injunction is no longer moot, and this Court would still have the authority to enter injunctive relief pursuant to FINRA Rule 13804. Either way the Court looks at this issue, LPL is wrong. Further, the Court itself stated on the record as follows:

> [A]s I signed in the stipulated order, I am retaining jurisdiction if there are issues with enforcement of that stipulated order. But for right now, I am going to close the case -- it won't stop you if any disputes arise from filing something and therefore -- and thereby effectively reopening the case.

Transcript of Hearing on Mot. for Preliminary Injunction, at 9:12-17 (Dec. 12, 2024).

The parties agreed this Court would maintain jurisdiction over the enforcement of the Stipulated Order. This Court expressly stated the same at the December 12 hearing. LPL attempting to retroactively strip this Court of jurisdiction despite its written agreement that the Court retain jurisdiction over this limited item is concerning at best.

LPL attempts to point to one of the "whereas clauses" in the Stipulated Order to suggest that this Court has exceeded its authority in light of the ongoing arbitration. However, recitals in agreements are not binding. *See A.S.D. v. W. Mun.*

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

*Water Dist. of Riverside Cnty.*, No. E030189, 2002 WL 31820335, at *8 (Cal. Ct. App. Dec. 17, 2002 ("Recitals in a contract, such as 'whereas' clauses . . . are not binding obligations unless referred to in the operative provisions of the contract. For example, a recital of intent in a 'whereas' clause of a contract cannot create any rights beyond those established by the operative terms of the contract. However, recitals in a contract should be reconciled with the operative clauses of the contract. . . 'whereas' clauses cannot be permitted to control over the express provisions of a contract." (quoting 17A C.J.S. (1999) Contracts, § 317, p. 340, fns. omitted.)

The express provision of the Stipulated Order is clear—and the Court itself was clear—that the Court retained jurisdiction over the enforcement of or any issues related to the Stipulated Order.

### 3.    Ameriprise Has Standing

Ameriprise does indeed have standing to protect itself, its goodwill and its reputation, in addition to the confidential and sensitive information that it has contractual, legal, and regulatory obligations to safeguard, along with its customers' privacy. Ameriprise briefed this point previously at the direction of the Court and reiterates and incorporates its arguments from Dkt. 51 herein.

LPL's argument here suffers from the same fatal flaw as its prior arguments. LPL is attempting to relitigate all of the issues raised in the parties' briefing in connection with the prior motion for preliminary injunction. However, the parties *agreed* to the relief contained within the Stipulated Order. By agreeing to this relief, LPL has effectively waived its argument that Ameriprise does not have standing to obtain the relief—though Ameriprise maintains it does, regardless. The July 18, 2025 Order does not modify or expand the relief to which LPL agreed. LPL is not likely to succeed in convincing the Ninth Circuit that even though it agreed to this relief, and even though it agreed to the Court maintaining jurisdiction over the Stipulated Order and the Court's ability to enforce issues related to the Stipulated Order, that the Court did not have the authority, nor Ameriprise the standing, to seek

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

1  clarification and enforcement of the Order that LPL drafted and the Court

2  subsequently entered.

### 4.    The Court Did Not Abuse Its Discretion

4  The Court did not abuse its discretion in entering the July 18, 2025 Order.

5  The Court simply clarified and enforced its prior order. LPL's citation to Federal

6  Rule of Civil Procedure 65 is not pertinent—the Court did not issue preliminary

7  injunctive relief; it simply required LPL to comply with the prior Stipulated Order

8  on a certain schedule after LPL delayed for eight months. LPL also did have an

9  opportunity to be heard at the July 17 hearing on these issues; it simply was not

10  convincing, and the Court called into question LPL's counsel's candor.

### E.    Neither LPL Nor the Nonparty Advisors Will Suffer Any Irreparable Injury Absent a Stay

13  Neither LPL nor the Nonparty Advisors will suffer any irreparable harm in

14  the absence of a stay. Both Motions argue that the irreparable harm is that LPL and

15  the Nonparty Advisors will have to engage in a forensic review. LPL's Motion

16  specifically states that it "will be forced to facilitate, at great expense" the forensic

17  review of its advisors' devices. *See LPL* Motion, at 12. Unfortunately for LPL, LPL

18  agreed to this exact forensic review in December. LPL cannot complain that it is

19  going to be irreparably harmed by something it voluntarily agreed to months ago.

20  LPL claims that Ameriprise's counsel's receipt of the confidential

21  information will irreparably harm LPL and "interfere[e] with LPL's ability to run its

22  business." *Id.* First, the confidential information sought was Ameriprise's to begin

23  with, so there is no harm in Ameriprise securing its deletion. Second, Ameriprise

24  and LPL entered a strict Protective Order (Dkt. 59) which LPL insisted upon. LPL's

25  claims therefore fall flat.

26  LPL is afraid that Ameriprise will gain an "unfair advantage in the ongoing

27  arbitration" if it receives the results of the forensic review. *See id.* This is just as

28  good as an admission that all of the advisors in question possess voluminous

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

1  confidential information that they are not supposed to have and LPL and the

2  advisors are doing everything they can to hide that.

3        Everything LPL and its advisors need to service current LPL customers is on

4  LPL's internal servers. Moreover, LPL still has on its servers all kinds of

5  confidential information related to individuals who never became LPL customers

6  (which LPL is required, but to date has failed, to segregate pursuant to Paragraph 5

7  of the Stipulated Order). In other words, the advisors and LPL suffer no harm by the

8  forensic examiner forensically deleting the sensitive information from the advisors'

9  unsecured personal devices. During this forensic review process, the advisors will

10 have ample opportunity to review what is going to be deleted to make sure it is

11 appropriate. If for some reason, at the end of the FINRA arbitration case, the FINRA

12 Panel were to determine that these advisors owned certain sensitive information

13 such as social security numbers of individuals who are not their customers, the

14 advisors can retrieve that same information back from the forensically preserved

15 image of their devices.

16       The Nonparty Advisors cite "workability and overbreadth" of the forensic

17 review. *See* Nonparty Advisors' Motion, at 10. This does not constitute irreparable

18 harm. Further, the Nonparty Advisors cite *Coinbase* again for the proposition that

19 compliance with the Order would create irreparable harm because the Nonparty

20 Advisors would be subject to a "district-court order while the appeal on arbitrability

21 was ongoing." *See id.* There is no appeal on arbitrability. The parties are all

22 currently in arbitration. The Nonparty Advisors next argue that "they will be forced

23 to undergo the expense and burden of the forensic-review process." *See id.* at 11.

24 However, LPL and Ameriprise agreed to pay for the costs of the forensic review.

25 Finally, the Nonparty Advisors' complaints about their constitutional rights are of

26 no moment—they are not being deprived of their devices; they are allowing a third

27 party to confidentiality and remotely connect to their devices for the purpose of

28 imaging them for narrow deletion of confidential customer data.

1    Accordingly, LPL does not suffer any harm and neither do the advisors in the

2    absence of a stay.

3    **F.    Ameriprise Will Suffer Harm if the Court Grants a Stay**

4    Ameriprise has been trying to effectuate this agreed-upon forensic review for

5    nearly eight months and has been stonewalled by the advisors refusing to complete

6    the jointly-drafted Certification, LPL refusing to enforce the Stipulated Order and its

7    advisors' compliance with the completion of the Certification and submission to the

8    forensic review, and LPL backtracking on its prior agreements, which necessitated

9    Ameriprise's motion to enforce. LPL argues that Ameriprise delayed in bringing its

10    claims, which undercuts its arguments as to harm. However, as Ameriprise has

11    previously briefed for this Court, Ameriprise was unaware of its claims until 2024,

12    and upon learning of them, brought its case against LPL at once.

13    **1.    The Public Interest Does Not Favor Entry of a Stay**

14    In agreeing upon the Stipulated Order, LPL and Ameriprise entered an

15    agreement. The Stipulated Order functions as a contract; as such, its terms must be

16    analyzed under California's rules of contract interpretation. *In re Hassen Real Est.*

17    *P'ship*, 4 F. App'x 537, 537 (9th Cir. 2001); *see also Flip Flop Shops Franchise Co.,*

18    *LLC v. Neb*, No. CV 16-7259-JFW (EX), 2016 WL 9275403, at *9 (C.D. Cal. Dec.

19    5, 2016) (it is "generally in the public interest to enforce valid contracts and make

20    parties live up to their agreements."). Even if not considered a typical agreement, the

21    public interest is only served by enforcing a court order. *See Engebretson v.*

22    *Mahoney*, 724 F.3d 1034, 1041 (9th Cir. 2013) ("the public interest in the

23    enforcement of court orders that is essential to the effective functioning of our

24    judicial process.").

25    LPL's and the Nonparty Advisors' arguments for why the public interest

26    favors a stay are all related to arbitration. But the arbitration has already been

27    pending and ongoing. Those arguments are moot. The public interest is not served

28    by stripping the Court of jurisdiction over an Order that it entered and the parties

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

1  agreed upon, and the public interest is certainly best served by a forensic review that

2  protects thousands of customers' sensitive data.

3       **G.**    **Sanctions Against LPL Are Appropriate**

4       Ameriprise has already briefed why sanctions against LPL are appropriate for

5  its bad faith conduct and its many misrepresentations to the Court. Paragraph 10 of

6  the July 18, 2025 Order clearly states that "[a]ny individual financial advisors who

7  fail to comply with the obligations and timeline set forth above will be subject to

8  further court orders and sanctions." LPL is, by any means, assisting those financial

9  advisors in circumventing this Court's Order. This should be the last straw for the

10  Court, which has on multiple occasions *sua sponte* raised the potential applicability

11  of sanctions to LPL's conduct in this case as well as the related frivolous case

12  brought by LPL. *See* Case No. 3:25-CV-00880-JO-MSB.

13  **IV.**    **Conclusion**

14       For the foregoing reasons, this Court should deny LPL's and the Nonparty

15  Advisors' *Ex Parte* Motions For Administrative Stay and Stay Pending Appeal (Dkt.

16  97) and issue sanctions against LPL for its bad faith conduct. Ameriprise further

17  respectfully request that the Court specifically hold and indicate that (1) LPL is not

18  likely to succeed on the merits; (2) LPL will not be irreparably injured absent a stay;

19  (3) issuance of the stay will substantially injure Ameriprise; and (4) the public

20  interest tips in favor of denying the stay.

21

22                      KLINEDINST PC

23

24

25  DATED: July 25, 2025     By:      s/ Daniel S. Agle

26                         Greg A. Garbacz
                          Daniel S. Agle

27                         Attorneys for Plaintiff, AMERIPRISE
                          FINANCIAL SERVICES, LLC

28

PLAINTIFF AMERIPRISE FINANCIAL SERVICES, LLC'S OMNIBUS OPPOSITION TO BOTH LPL'S AND
NONPARTY ADVISORS' EX PARTE FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL

1

2

SHUMAKER, LOOP & KENDRICK, LLP

3   DATED: July 25, 2025      By:       s/ Michael S. Taaffe

4                                    Michael S. Taaffe

5                                      Attorneys for Plaintiff AMERIPRISE FINANCIAL SERVICES, LLC

6

7

## **CERTIFICATE OF SERVICE**

8          I hereby certify that on July 25, 2025, I electronically filed the foregoing with

9   the Clerk of the Court using the CM/ECF. Participants in the case who are registered

10  CM/ECF users will be served by the CM/ECF system.

11

12                                  s/ Daniel S. Agle

26816333.1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

Case No. 3:24-CV-01333-JO-MSB
PLAINTIFF AMERIPRISE FINANCIAL SERVICES, LLC'S OMNIBUS OPPOSITION TO BOTH LPL'S AND NONPARTY ADVISORS' EX PARTE FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL