Michael S. Taaffe, FL Bar No. 490318 (Admitted *Pro Hac Vice*)
Justin P. Senior, FL Bar No. 1004223 (Admitted *Pro Hac Vice*)
James E. Fanto, FL Bar No. 1004144 (Admitted *Pro Hac Vice*)
SHUMAKER, LOOP & KENDRICK, LLP
240 South Pineapple Avenue, Post Office Box 49948
Sarasota, Florida 34230-6948
(941) 364-2720; FAX: (941) 366-3999
Mtaaffe@shumaker.com
Jsenior@shumaker.com
Jfanto@shumaker.com

Daniel S. Agle, Bar No. 251090
dagle@klinedinstlaw.com
Dan Lawton, Bar No. 127342
dlawton@klinedinstlaw.com
KLINEDINST PC
501 West Broadway, Suite 1100
San Diego, California 92101
(619) 400-8000/FAX (619) 238-8707
dagle@klinedinstlaw.com

Attorneys for Plaintiff Ameriprise
Financial Services, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERIPRISE FINANCIAL SERVICES, LLC,<br><br>                Plaintiff,<br><br>        v.<br><br>LPL FINANCIAL, LLC,<br><br>                Defendant. | Case No. 3:24-CV-01333-JO-MSB<br><br>**PLAINTIFF AMERIPRISE FINANCIAL SERVICES, LLC'S MEMORANDUM IN OPPOSITION TO THE INTERVENING ADVISORS' MOTION TO COMPEL ARBITRATION AND STAY CASE**<br><br>Date:     April 9, 2026<br>Judge:   Hon. Jinsook Ohta<br>Time:    9:30 a.m.<br>Place:    Courtroom 4C |

1

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

# TABLE OF CONTENTS

**Page**

I.    Introduction. ........................................................................ 1

II.    Argument. ........................................................................... 3

    A.    The Intervening Advisors' framing of the dispute is
        disingenuous. ....................................................... 3

    B.    Ameriprise's right to obtain interim relief. ............................. 6

    C.    Relevant authorities do not warrant compelling
        arbitration or issuing a blanket stay....................................... 11

    D.    Granting the Intervening Advisors' motion would
        prejudice Ameriprise's due process rights............................. 16

III.    Conclusion. ........................................................................ 17

Case No. 3:24-CV-01333-JO-MSB

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

# TABLE OF AUTHORITIES

**Page**

## CASES

*AT&T Mobility LLC v. Concepcion*
563 U.S. 333, 344 (2011) ...................................................................... 12

*Bonevento v. Ameriprise Fin. Servs., LLC*
Index No. 651680/2025, slip op. (N.Y. Sup. Ct. Apr. 21, 2025) ....... 10

*Bushley v. Credit Suisse First Boston*
360 F.3d 1149, 1153 (9th Cir. 2004) ............................................. 12, 13

*Charles Schwab & Co, Inc. v. Gonzalez*, No. 15-23159-CIV, 2015
WL 11201182, at *9 (S.D. Fla. Dec. 4, 2015) ................................... 10

*Charles Schwab & Co. v. Newton*, No. 3:16-CV-00236, 2016 WL
1752767, at *1 (M.D. La. May 2, 2016) .............................................. 10

*Citibank, N.A. v. Mitchell*, No. 24-CV-08224-CRB, 2024 WL
4906076, at *7 (N.D. Cal. Nov. 26, 2024) ............................................ 9

*Downer v. Siegel*
489 F.3d 623, 626 (5th Cir. 2007) ....................................................... 12

*First Command Advisory Services, Inc. v. Swanson*
No. 141-361627-25, slip op. at 7 (Tex. Dist. Ct.—Tarrant
Cnty. Feb. 18, 2025) ............................................................................ 10

*J.P. Morgan Sec., LLC v. Duncan*
No. 2:22-CV-11732, 2022 WL 3325514 (E.D. Mich. Aug. 11,
2022) ..................................................................................................... 10

*Leicht v. Bateman Eichler, Hill Richards, Inc.*
848 F.2d 130, 133 (9th Cir. 1988) ....................................................... 12

*Rent-A-Center, West, Inc. v. Jackson*
561 U.S. 63 (2010) ......................................................................... 14, 15

*Revitch v. DIRECTV, LLC*
977 F.3d 713 (9th Cir. 2020) ......................................................... 14, 15

*Smith v. Spizzirri*
601 U.S. 472 (2024) ............................................................................. 12

*Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*
609 F.3d 975, 979 (9th Cir. 2010) ......................................................... 9

*UBS Fin. Servs. Inc. v. Lofton*, No. 1:09-CV-367, 2009 WL
10679630, at *2 (S.D. Ohio June 3, 2009) ............................................ 9

**STATUTES**

9 U.S.C. § 3 .................................................................. *passim*

9 U.S.C. § 4 .......................................................................... 14-17

**RULES**

FINRA Rule 13200 ......................................................... *passim*

FINRA Rule 13804 ......................................................... *passim*

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

Case No. 3:24-CV-01333-JO-MSB

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

## I.    Introduction.

Following the Ninth Circuit's memorandum disposition vacating the Court's July 18, 2025 order and remanding for certain advisors to be permitted to intervene, the Intervening Advisors filed a motion to compel arbitration and stay further proceedings (Ex. 1). The purported legal bases for their motion are fatally flawed. Their motion also fails because the relief it seeks would work a significant prejudice on Ameriprise— staying this case and compelling it to arbitration now, prior to any enforcement of the Stipulated Order (Doc. 53), depriving Ameriprise of its due process rights.

Despite the fact that the parties are required to arbitrate the ultimate merits of the case, Ameriprise has a right, based on FINRA Rule 13804,[1] to seek a preliminary injunction.  This Ameriprise did on August 14, 2024.  *See* Ex. 2. LPL and Ameriprise, both understanding and abiding by this rule-based right, jointly moved to stay this case with the exception of the injunction motion. *See* Ex. 3 ("[P]ursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, all proceedings in this Court should be stayed, with the exception of the pending motion for preliminary injunction."). On entry of the Stipulated Order, over which the parties expressly agreed the Court would maintain jurisdiction, the Court denied as moot both the joint motion to stay as well as the injunction motion, given that the Stipulated Order addressed relief sought in that motion and the court maintained authority to enforce its own decree. *See* Ex. 4.

To this day, LPL still refuses to comply with the Stipulated Order, to which, ironically, LPL agreed over fourteen months ago. The

---

[1] *Inter alia.*

Case No. 3:24-CV-01333-JO-MSB

1  Intervening Advisors now seek to undermine that Order further by
2  asking the Court to divest itself of jurisdiction over the Stipulated Order.
3  Yet doing so would have the effect of nullifying Ameriprise's right to seek
4  the preliminary injunction. The Court never issued a substantive ruling
5  on Ameriprise's original motion. Nor has Ameriprise obtained any of the
6  relief requested in it. This is why Ameriprise has separately moved to
7  enforce the terms of the Stipulated Order as drafted. *See* Doc. 117.

8      The Intervening Advisors offer misleading legal arguments, cherry-
9  pick holdings, and cite dicta from cases without providing relevant
10 context.  Too, they ignore the reality, based in consistent legal authority
11 across the country, that Ameriprise was and is able to obtain injunctive
12 or other interim relief and have the Court enforce and oversee that relief,
13 despite being bound to arbitrate the ultimate merits of the case.

14     The Intervening Advisors' motion further ignores the facts that: (1)
15 the Stipulated Order is an agreement between LPL, the Intervening
16 Advisors' employer, and Ameriprise, and LPL has the power and
17 authority to control the Intervening Advisors and secure their
18 compliance with the Stipulated Order, otherwise it would not have
19 entered the Stipulated Order; (2) all parties know that forensic review is
20 a common element of ordered interim relief in similar cases across the
21 country; and (3) arbitration is and has been proceeding in the normal
22 course since 2024, leaving nothing for the Court to compel.

23     The Court should deny the Intervening Advisors' motion in its
24 entirety.

25

26

27

28

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

## II.  Argument.

### A.  The Intervening Advisors' framing of the dispute is disingenuous.

The Intervening Advisors falsely frame this lawsuit as a recruiting battle between LPL and Ameriprise—not so. Ameriprise's lawsuit was, and always has been, about Ameriprise protecting its contracts, its goodwill, and its customers' information after learning after the fact, and through this very case, the extent of the misappropriations committed by the advisors who use the Bulk Upload Tool to misappropriate Ameriprise confidential information. It is disingenuous for the Intervening Advisors to claim that they are "caught in between these two warring brokers" when they themselves have misappropriated, in some cases, up to 187 categories of confidential and sensitive client and beneficiary information in direct violation of their contracts as well as the Protocol For Broker Recruiting. *See* Ex. 7 at 3.

Further obliquely misrepresenting the facts and history of this matter in an attempt to undermine the legitimacy of Ameriprise's case, the Intervening Advisors attempt to support their contention that this battle is really between the brokerage firms by pointing out that Ameriprise did not initially sue the advisors, and only sued LPL. *See id.* at 4. This is easily explained. Ameriprise did not know the identities of all of the advisors who used the bulk upload tool, nor the extent of the information taken, until Ameriprise filed this case and obtained that information in lieu of moving forward with their motion for expedited discovery in connection with their then-pending motion for preliminary injunction.

More specifically, Ameriprise did not obtain a list of the advisors who used the Bulk Upload Tool until LPL stipulated to provide that

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

1  information in order to avoid Magistrate Berg potentially ordering more

2  fulsome expedited discovery, as sought by Ameriprise. This list came in

3  the form of an attachment to the Declaration of Ms. Sinquimani (Doc.

4  39.4), in which Ms. Sinqiumani identified all of the advisors, which

5  includes the Intervening Advisors here, who "entered customer

6  information beyond that permitted by the Broker Protocol into the Bulk

7  Upload Tool and returned it to LPL." *See* Ex. 6 at ¶ 12.

8      Intervening Advisors cannot extricate themselves from their own

9  wrongdoing by continuing to point fingers at both LPL and Ameriprise.

10  Nor can they pull the wool over this Court's eyes with revisionist history,

11  as Intervening Advisors and LPL both continue to do. Much like LPL has

12  manufactured a false and unsupportable *post factum* misinterpretation

13  of the scope of the forensic review required by the stipulated Order,

14  Intervening Advisors now too present a false and unsupportable *post*

15  *factum* premise to the Court that a stay is the only appropriate result.

16  However, Intervening Advisors entirely—and critically—omit the fact

17  that on May 7, 2025, they attached to their *ex parte* motion to reopen the

18  case and intervene (Ex. 9) a memorandum in support of a motion to stay

19  the case pending arbitration or alternatively to modify the Stipulated

20  Order (Ex. 10) (emphasis added). In other words, when the Intervening

21  Advisors initially sought to intervene, they did so with the purpose of

22  seeking a stay *or* a limited modification of only Paragraph 4 of the

23  Stipulated Order. In relevant part, that memorandum reads as follows:

24      If the Court declines to stay the cases, it should, at a minimum,
       modify the Stipulated Order pursuant to Rule 60(b) to protect
25      the interests of the Advisors and their customers. Modification
       is required to ensure the Advisors maintain ready access to
26      critical information concerning their *current* customers, and to
       allow the Advisors to search their devices and to certify in
27      writing that they have deleted all "Non-Customer

28

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

4

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

1    Information," if any, before requiring invasive searches and

2    deletions.

3    *See* Ex. 10, at 9.

4         In other words, although the Intervening Advisors' current motion

5    claims that "the entirety of the dispute must proceed in the pending

6    arbitration and further proceedings in this Court must be stayed," their

7    prior filings before this Court belie that claim and indicate that

8    alternatively a simple modification of one paragraph of the Stipulated

9    Order would be appropriate.

10        Of course, the Court is aware of this and knows that relief

11   alternative to a stay could be appropriate, as the Court shortly thereafter

12   ordered the parties and the putative intervenors to "meet and confer

13   regarding the advisors' request to amend the stipulated order." *See* Ex.

14   11. As the Court also knows, the Intervening Advisors' suggestion that

15   they be able to self-delete customer information was (and still is)

16   completely unworkable, given that the advisors would not know how to

17   ensure that they located, let alone permanently deleted, all relevant

18   documents and information—naturally, this is why the independent

19   third party forensic examiner is necessary, as agreed by Ameriprise and

20   LPL.

21        Importantly, the only other substantive modification requested by

22   the Intervening Advisors in their original request has already been

23   addressed—the relief sought by Ameriprise in its renewed motion to

24   enforce (Doc. 117) incorporates robust protections for the advisors that

25   more than satisfy their identified concerns. The Proposed Order provided

26   to the Court states that for current customers of the advisors, "[i]f the

27   metadata indicates that the data was created or transferred after the

28   financial advisor's license transfer date from Ameriprise to LPL, the

forensic examiner shall neither delete nor create a forensic copy of that data." *See* Ex. 12 at ¶ 3. This entirely satisfies the Intervening Advisors' concern regarding ensuring ready access to information concerning their current customers. However, the Proposed Order goes further, building in even additional protections for the advisors at issue, stating:

> [F]inancial advisors' counsel may dispute the deletion and retention by LPL of any data by submitting specific factual evidence showing that the data was in fact created by or transferred to advisor after the license transfer date. If such evidence is reasonably supported, the parties shall take corrective action to restore that data to the advisor and LPL.

*See id.*

The current proposal provides more protections than what Intervening Advisors indicated that they would be satisfied with in their original application. They are simply not allowed to self-delete, and the process of review and deletion resides with an independent third party forensic examiner—and at no cost to any of the advisors, given LPL and Ameriprise agreed to share the cost of the forensic examination, nor any time or resource burden, given that the forensic examiner can perform its function remotely.

Ameriprise urges the Court to not allow such a result to occur.

**B.    Ameriprise's right to obtain interim relief.**

The Intervening Advisors rely solely on FINRA Rule 13200 for the broad proposition that all disputes must be arbitrated. *See* Motion, Doc. 115, at 7-8. While this is a general rule, other FINRA rules exclude certain forms of relief from this generalized agreement to arbitrate. Specifically, the FINRA arbitral forum lacks a mechanism to implement timely injunctive relief or expedited discovery, which is why Ameriprise was allowed to seek both in the instant case.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

Accordingly, FINRA Rule 13804 creates an exception to that general rule and allows a party to seek temporary injunctive relief in connection with filing a FINRA Statement of Claim in arbitration. Ameriprise did this very thing on July 30, 2024, consistent with FINRA Rule 13804. Naturally, the Intervening Advisors largely ignore this Rule, instead relegating it to a single footnote and dismissing it with inaccurate analysis bereft of any cognizable legal support.

Rule 13804 provides in pertinent part:

*(a) Temporary Injunctive Orders*
*(1) In industry or clearing disputes required to be submitted to arbitration under the Code, parties may seek a temporary injunctive order from a court of competent jurisdiction. Parties to a pending arbitration may seek a temporary injunctive order from a court of competent jurisdiction even if another party has already filed a claim arising from the same dispute in arbitration pursuant to this paragraph [...].*

Subpart (b) of Rule 13804 governs review of such orders. It provides in pertinent part:

*(b) Hearing on Request for Permanent Injunctive Relief*
*(1) Scheduling of Hearing. If a court issues a temporary injunctive order, an arbitration hearing on the request for permanent injunctive relief will begin within 15 days of the date the court issues the temporary injunctive order [...].*

When put together, subparts (a) and (b) of Rule 13804 tell a complete story: Rule 13804 is a deliberate limitation on the generalized arbitration agreement with respect to a request for non-permanent injunctive relief.

Further, the language of Rule 13804(b)(5) is clear that on having such a hearing contemplated by subsection (b), the arbitration panel has the power to "order the parties jointly to move to modify or dissolve" a court order. The panel's power to do so provides the cleanest textual hook demonstrating that the Court need not and should not abdicate

1   enforcement of its own order while arbitration proceeds—in other words,

2   this language only makes sense if a district court's injunctive order

3   jurisdiction persists.

4       Here, Ameriprise initiated a FINRA arbitration and

5   simultaneously filed an action in the district court in which it sought a

6   preliminary injunction consistent with FINRA Rule 13804. The district

7   court denied Ameriprise's motion as moot after the parties agreed to the

8   Stipulated Order. Accordingly—because LPL took the position that no

9   injunction order was entered by the Court—the panel of arbitrators

10  never held a hearing as contemplated by Rule 13804. Had LPL agreed

11  that the Stipulated Order was indeed an injunction, Ameriprise would

12  have had the right to have the FINRA Panel confirm that injunction in a

13  Rule 13804 hearing, and alternatively LPL—or any of the Advisors—

14  would have had the opportunity to seek a modification or dissolution of

15  the Stipulated Order via the same 13804 hearing. However, based on

16  LPL's continued representations that the Stipulated Order was not an

17  injunction, Ameriprise had no ability to have the FINRA Panel confirm

18  the Stipulated Order as an injunction to which the Advisors were all

19  subject and must comply. Naturally, LPL changed its tune for the

20  purposes of attempting to appeal this court's July 18 order, insisting this

21  relief is injunctive. The idea that this Court would not have continuing

22  jurisdiction over its own injunctive order defies logic.

23      The Intervening Advisors engage in mental gymnastics to attempt

24  to convince this Court, by their reading, that Rule 13200 requires

25  arbitration of literally any claim, and that the Rule 13804 exception

26  applies only to "cases of true exigency." See Motion, Doc. 115, at 8; n.7.

27  However, legal support for this contention is conspicuously missing, and

28  the Court will note that nowhere in the plain language of Rule 13804 is

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

the exception qualified by emergency let alone "status quo" or "true exigency," as Intervening Advisors baselessly claim. Instead, Intervening Advisors confusingly cite *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 979 (9th Cir. 2010) to support their position, but the Appellate Court's Memorandum already made a finding counter to the Intervening Advisors' position:

> In fact, contrary to Advisors' argument, this court has noted—in the context of the Rules of Arbitration of the International Chamber of Commerce, which Advisors argue are similar to Financial Industry Regulatory Authority Rules—that temporary injunctive relief is sometimes available through "any competent judicial authority" after the commencement of arbitration proceedings. *Toyo Tire Holdings of Ams. Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 979 (9th Cir. 2010) (internal quotation marks and citation omitted).

*See* Ex. 11, at n.3.

Contrary to Intervening Advisor's position, it is commonplace for courts around the country to order, and necessarily maintain jurisdiction over, forensic review as part of interim injunctive relief despite pending arbitration. *See Citibank, N.A. v. Mitchell*, No. 24-CV-08224-CRB, 2024 WL 4906076, at *7 (N.D. Cal. Nov. 26, 2024) (granting forensic review of devices along with TRO in case already in FINRA between member firm and associated person); *UBS Fin. Servs. Inc. v. Lofton*, No. 1:09-CV-367, 2009 WL 10679630, at *2 (S.D. Ohio June 3, 2009) (granting motion for TRO along with voluminous discovery in addition to forensic examination of devices with FINRA arbitration pending); *see also Charles Schwab & Co, Inc. v. Gonzalez*, No. 15-23159-CIV, 2015 WL 11201182, at *9 (S.D. Fla. Dec. 4, 2015) (granting injunction, return of documents, and forensic review despite pending FINRA arbitration); *Charles Schwab & Co. v. Newton*, No. 3:16-CV-00236, 2016 WL 1752767,

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

at *1 (M.D. La. May 2, 2016) (same); *Hausinger Fin., LLC v. Saste*, No. 8:23-CV-2504-VMC-CPT, 2024 WL 1526111 (M.D. Fla. Apr. 9, 2024) (entering stipulated order, part of which was forensic review, and specifying that "the litigation will be administratively stayed pending FINRA arbitration" and need not take further action other than executing the order "and/or enforcing the terms, restrictions, and conditions stated within this Order."); *J.P. Morgan Sec., LLC v. Duncan*, No. 2:22-CV-11732, 2022 WL 3325514 (E.D. Mich. Aug. 11, 2022) (granting a TRO and expedited discovery, including the right to inspect defendant's personal and business computers and electronic devices, pending FINRA arbitration); *First Command Advisory Services, Inc. v. Swanson*, No. 141-361627-25, slip op. at 7 (Tex. Dist. Ct.—Tarrant Cnty. Feb. 18, 2025) (granting preliminary injunction and ordering forensic review to take place within three days, pending AAA arbitration).

Further evidence that the Intervening Advisor's position is one of convenience is that LPL filed—and several other advisors also sought to intervene in—an entirely separate action in this Court against Ameriprise for a TRO based on alleged defamation in data breach notifications despite the fact that FINRA arbitration had been ongoing for nearly a year at that point. Similarly, one of the advisors at issue in this case separately attempted to enjoin the pending FINRA arbitration itself, seeking to litigate the case in New York state court instead. *See Bonevento v. Ameriprise Fin. Servs., LLC*, Index No. 651680/2025, slip op. (N.Y. Sup. Ct. Apr. 21, 2025). Of course, the New York court denied that attempt. *See id.* What should be noted, however, is that LPL and its advisors are constantly changing their arguments to fit their positions— all in concerted efforts to avoid this forensic review.

Nevertheless, the rules and the case law are abundantly clear.

Ameriprise is, and always has been, entitled to obtain interim injunctive relief in the form of forensic review from this Court despite the fact that FINRA arbitration is currently ongoing. So too does the Court have authority to oversee and enforce the relief it has entered via the Stipulated Order, as LPL and Ameriprise agreed,[2] and as the Court reiterated on the record, to no objection.[3]

## C.    Relevant authorities do not warrant compelling arbitration or issuing a blanket stay.

### i.    *Section 3 of the Federal Arbitration Act is not applicable*

As a threshold matter, the Ninth Circuit expressly declined to reach the Federal Arbitration Act ("FAA") Section 3 issue. In doing so, it observed that, as stated above, temporary injunctive relief may remain available from "any competent judicial authority"[4] after arbitration commences, a point directly at odds with the Intervening Advisors' motion's insinuation that Section 3 and Rule 13200 categorically strip the Court of ongoing enforcement authority. That observation, and the Ninth Circuit's additional statement that the Section 3 question here is not amenable to a "straightforward application of controlling precedent," supply persuasive authority for this Court to resist a blanket stay of all enforcement activity.

Moreover, Section 3 simply is not applicable here. This case was already administratively closed but for the enforcement of the Stipulated

---

[2] *See* Ex. 1 ("[t]he Court shall maintain jurisdiction over this Stipulated Order and its enforcement.").

[3] *See* Ex. 12 ("However, as I signed in the stipulated order, I am retaining jurisdiction if there are issues with enforcement of that stipulated order.").

[4] *See infra*, at 8.

Case No. 3:24-CV-01333-JO-MSB

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

Klinedinst PC
501 West Broadway, Suite 1100
San Diego, California 92101

Order. Ameriprise is already—and has been—arbitrating. Section 3 of the FAA explicitly states that the Court may "stay the **trial** of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C.A. § 3 (emphasis added). There is no trial scheduled in this case; therefore, Section 3 is not applicable based on the plain language of the statute.

However, in furtherance of its claims related to Section 3, Intervening Advisors cherry-pick language from, and rely solely on, *Smith v. Spizzirri*, 601 U.S. 472 (2024) and *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1153 (9th Cir. 2004). The motion relies on *Spizzirri* for the proposition that Section 3 requires a court to stay all proceedings when a lawsuit involves an arbitrable dispute and a party requests a stay. *See* Motion, at 10. *Spizzirri* analyzes stays and dismissals in the context of appealability and applies general FAA maxims. *See Spizzirri*, 360 F.3d, at n.1.[5] But *Spizzirri* does not address the scope of permissible court action under a rule-based injunctive

---

[5] This is true of all cases cited in Intervening Advisors' Motion. For example, the motion also cherry-picks generalities from *Leicht v. Bateman Eichler, Hill Richards, Inc.*, 848 F.2d 130, 133 (9th Cir. 1988), *Downer v. Siegel*, 489 F.3d 623, 626 (5th Cir. 2007), and *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) all for the general propositions that doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, that the Fifth Circuit holds that the presumption in favor of arbitrability is "heavy," and that the FAA's "overarching purpose" is enforcing arbitration agreements according to their terms, respectively. These cases fail to assist here for the same reasons: Here, the operative texts include not only FINRA Rule 13200, but also Rule 13804's specific injunctive-relief pathway, together with the parties' stipulation and the Court's embedded-forensic protocol. These Rules supply the "terms" of the parties' "agreements" and should be enforced as such.

carveout like FINRA Rule 13804, nor does it speak to whether an already-issued, court-supervised interim process may be overseen or enforced while the merits proceed in arbitration. Those are distinct questions, rendering *Spizzirri* inapposite.

The motion similarly relies on *Bushley* for an additional FAA truism—that the FAA aims to move parties to an arbitrable dispute out of court and into arbitration "as quickly and easily as possible." Much like in *Spizzirri*, the *Bushley* Court did not address the availability or supervision of interim court relief in aid of arbitration or whether a federal court should stay an ongoing, limited enforcement proceeding ancillary to such relief; instead, the phrase relied on by Intervening Advisors appears in a jurisdictional discussion of Section 16 appealability. Again, inconsequential here.

In this case, arbitration is already ongoing; indeed, the Intervening Advisors' motion itself recounts the merits hearing date. *See* Motion, Doc. 115, at 6. That fact undercuts the premise that the Court must now "move" anyone "into arbitration." It also reinforces the tailored role of the Court under Rule 13804, which is to issue, oversee, and refine injunctive orders while the ultimate merits are arbitrated. Moreover, the Ninth Circuit's memorandum disposition as cited above is at odds with the Intervening Advisors' suggestion to extend *Spizzirri* to enjoin all court supervision of interim relief expressly contemplated by Rule 13804. Notably, *Spizzirri* also emphasized the statutory term "stay" as a "temporary suspension," which is language consistent with a court's continuing jurisdiction to implement, tailor, or enforce interim measures. *See Spizzirri*, 360 F.3d, at 472.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

*ii.    Section 4 of the FAA is similarly inapplicable.*

Much like Section 3 of the FAA is geared toward the "trial of the action," so too does Section 4 have a specific application—when there is a "failure, neglect, or refusal of another to arbitrate." *See* 9 U.S.C. § 4. Intervening Advisors' reliance on Sections 3 and 4 ignores the procedural reality that arbitration is proceeding in the normal course. As stated above, the motion identifies the final merits hearing date for the arbitration. That acknowledgment also helps distinguish Section 4's "failure, neglect, or refusal" predicate and supports the narrow proposition that what remains for this Court is precisely what Rule 13804 contemplates: tailored injunctive relief, supervised by a court of competent jurisdiction.

Intervening Advisors' motion relies only on *Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020) and *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) for its claim that Section 4 is applicable. However, neither of these cases are particularly helpful, and as with the prior authorities, can only be used by the Intervening Advisors to parade generalized FAA principles in a vacuum. The motion uses *Rent-A-Center* to classify arbitrability questions as "threshold" and to argue the Court's role is limited when faced with an FAA petition to compel arbitration under Section 4. *See* Motion, Doc. 115, at 3. However, *Rent-A-Center* concerns delegation of arbitrability to the arbitrator and severability of such a delegation clause—and is therefore contextually not relevant here.[6] While Intervening Advisors' reliance on *Rent-A-Center*'s description of the FAA's structure is accurate in the abstract, neither the case nor the motion address the present posture: there has already been

---

[6] *Rent-A-Center,* 561 U.S., at 72-76.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

a FINRA filing, arbitration is ongoing, and Ameriprise is not refusing to arbitrate. Section 4's text presupposes a "failure, neglect, or refusal" to arbitrate.

The motion's reliance on *Revitch* is not only unhelpful to the Intervening Advisors' position but instead supports Ameriprise's. Intervening Advisors cite *Revitch* for more generalized FAA propositions; in this instance, the motion cites *Revitch's* two-part arbitrability inquiry—whether a valid agreement exists and whether it encompasses the dispute. *See* Motion, Doc. 115, at 3. *Revitch*, however, is also a reminder that courts parse actual contract language and context to determine scope, and that the presumption in favor of arbitration does not override plain terms or resolve disputes over contract formation or existence. In *Revitch*, the court spends substantial time examining the language of the relevant contract at issue as well as the parties' intents. *See generally, Revitch*, 977 F.3d, at 717-718 (citing California law regarding contract interpretation in context of arbitration agreements).

This Court's task, per *Revitch*, is to read the governing texts. In this industry dispute the contract at issue—as admitted in the motion—is the FINRA Code,[7] with Rule 13200's arbitration mandate and Rule 13804's permission to seek court-issued temporary orders. Nothing in *Revitch* suggests that such an order must cease to be supervised or enforced once arbitration is underway.

Arbitration is proceeding, arbitrators have been handling discovery disputes, and a merits hearing is set. On that undisputed record, the statutory predicate for Section 4 ("failure, neglect, or refusal" to arbitrate) is absent. The focus of Section 3 on staying "the trial of the

---

[7] Coupled with the Stipulated Order.

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

action" does not speak to, much less prohibit, enforcement of an existing, valid, court-supervised injunctive order expressly contemplated by Rule 13804. The better reading, and one consistent with the Ninth Circuit's memorandum disposition, is that the Court may and should maintain narrowly tailored supervision and enforcement of the forensic protocol in aid of the ongoing arbitration.

Accordingly, the Court should not compel arbitration, nor should it order a blanket stay of this entire case.

### D.    Granting the Intervening Advisors' motion would prejudice Ameriprise's due process rights.

The Court cannot grant a blanket stay of this case now without enforcing the Stipulated Order. Doing so would violate Ameriprise's due process rights. Ameriprise's formerly pending preliminary injunction motion was denied as moot after the Court entered the parties' negotiated Stipulated Order. Ameriprise's joint motion with LPL to stay the case was also denied as moot after the Court's entry of the Stipulated Order. However, Ameriprise had the right to move for injunctive relief. The parties agreed that the Court would hear the motion for injunction and maintain jurisdiction over its order in the normal course, and that the rest of the case and its deadlines would be stayed. The parties then agreed on relief that otherwise mooted the then-injunction motion and motion to stay.

Given that the Stipulated Order has not been complied with (by any party or nonparty), staying the case and compelling all of it to arbitration would effectively rob Ameriprise of its right to seek injunctive relief.

## III.  Conclusion.

The cases cited in the Intervening Advisors' motion largely restate unobjectionable FAA truisms.  But they are taken out of context and ignore both the practical and procedural realities of this dispute: arbitration is ongoing, Ameriprise has not refused to arbitrate, and the only active judicial business concerns a stipulated forensic protocol. The authorities the motion relies on do not prohibit a district court from continuing to oversee and enforce such an interim order, injunctive or otherwise. In sum, each cited case, read in context, supports at most the unremarkable proposition that arbitrable merits belong in arbitration. None justifies extinguishing this Court's Rule 13804 authority to continue supervising and enforcing the interim forensic protocol it approved in December of 2024. Conversely, this Opposition provides numerous cases demonstrating that this relief is common across the country. *See infra*, pages 9-10.

The Intervening Advisors' main argument is that Rule 13200 compels a blanket stay of "the entirety" of these proceedings and eliminates the Court's role. Not only is this erroneous based on the plain language of the rule, but this cannot be squared with Rule 13804's text, with Ninth Circuit authority recognizing interim equitable relief power, or with the Ninth Circuit's own comments in the appeal to this very case that temporary injunctive relief may be sought in court post-commencement of arbitration. The better reading is the narrower and orthodox one: arbitration governs the merits, the FAA requires a stay of merits litigation, and Rule 13804 preserves a space for courts to issue and to supervise temporary injunctions and related interim relief.

The Intervening Advisors have already indicated in prior motions practice that a modification of the Stipulated Order would be appropriate

KLINEDINST PC
501 WEST BROADWAY, SUITE 1100
SAN DIEGO, CALIFORNIA 92101

relief alternative to a stay.  Further, a stay would have the effect of robbing Ameriprise of its right to have sought injunctive relief, given that its former motion for preliminary injunction was denied as moot by this Court following entry of the Stipulated Order, through which Ameriprise has received no relief to date.

The Court should deny this motion.


Respectfully submitted,

SHUMAKER. LOOP & KENDRICK. LLP


DATED:  March 5. 2026      By: s/ Michael S. Taaffe
                                Michael S. Taaffe
                                Attorneys for Plaintiff Ameriprise
                                Financial Services, LLC

Respectfully submitted,

KLINEDINST PC


DATED:  March 5. 2026      By: s/Daniel S. Agle
                                Daniel S. Agle
                                Attorneys for Plaintiff Ameriprise
                                Financial Services, LLC

30543283.1

Case No. 3:24-CV-01333-JO-MSB